## QUINN ET AL V. SHIELDS ET AL.

| 62 | 129 |
|----|-----|
| 93 | 103 |

| 62 | 129 |
|----|-----|
| 118 | 245 |

| 62 | 129 |
|----|-----|
| 121 | 85 |
| 121 | 88 |

| 62 | 129 |
|----|-----|
| 133 | 725 |

| 62 | 129 |
|----|-----|
| 135 | 115 |

1. **Will:** DEVISE TO CHARITABLE CORPORATION: COMPETENCY OF CORPORATOR AS WITNESS. One of the original corporators and continuing members of a charitable corporation is a competent witness to a will whereby real and personal property is devised and bequeathed to the corporation, notwithstanding such witness may have a contingent interest in the property of the corporation upon its possible dissolution.

2. **Corporation:** WHETHER FOR CHARITY OR FOR PROFIT. The articles of incorporation of "The Sisters of the Humility of Mary, Ottumwa, Iowa," considered, and the said corporation *held* to be one for charitable purposes, and not for the pecuniary profit of the corporators.

3. **Will:** DEVISE TO CORPORATION: ILLEGAL CORPORATE ORGANIZATION. A bequest is included within the proper definition of the term "contract;" and when the will is admitted to probate, it is to be regarded as a contract of record. It follows, under section 1089 of the Code, that, when a corporation seeks to enforce a bequest in a will duly admitted to probate, its claims cannot be resisted on the grounds that it has not been legally organized; and it makes no difference that the corporation is defendant in the action, and is seeking to maintain the bequest against the assaults of the plaintiffs, who are urging against the validity of the bequest the want of legal organization in the corporation.

4. ——: DEVISE FOR LIFE: DISPOSITION OF REMAINDER BY WILL OF DEVISEE. It is competent for a testator to give by will to a friend personal and real property, to be by him enjoyed during his natural life, with a provision that what remains at his death shall not descend to his heirs, but shall be devised by him "to the support and management of

such worthy and meritorious charitable and educational and religious institutions of the Roman Catholic faith" as the said friend may determine, and such gift will not be declared void on the ground that the ultimate beneficiaries are not sufficiently designated therein, nor on the ground that it is uncertain whether the devisee for life will execute a will designating the ultimate beneficiaries.

5. ———: TRUST ESTATE: WORDS TO CREATE.    No particular form of words is necessary to create a trust estate by will.  It is sufficient if the intent is clear.

*Appeal from Wapello District Court.*

TUESDAY, DECEMBER 4.

ACTION in chancery to construe a will, and to set aside certain bequests therein made.  A demurrer to the petition was sustained, and, plaintiffs refusing to amend, the petition was dismissed. · Plaintiffs appeal.  The facts of the case are fully stated in the opinion.

*Stiles & Beaman*, for appellants.

*H. B. Hendershott* and *McNett & Tisdale*, for appellees.

BECK, J.—I.  Mary Tally, deceased, executed a will, in the sixth item of which she directs that a certain note and mortgage securing it, made to her by The Sisters of the Humility of Mary, a corporation organized under the laws of the state, should be surrendered to that corporation, and should be canceled without payment.  The seventh item of the will disposes of certain notes and mortgages by directing, in the language of the will, that the securities "shall go and be held and controlled and managed by my friend and relative, Miss Mary T. Shields, for and during her natural life, and for her and to her sole benefit, and, at the death of Mary T. Shields, I desire, and my will is, that the principal of the securities in this subdivision of my will mentioned, and so much of the interest arising therefrom as shall remain in the hands of Mary T. Shields unexpended, shall go to the sup-

port and encouragement of such worthy and charitable and educational and religious institutions of the Roman Catholic faith, as my said friend, Mary T. Shields, may determine, and she is charged with the duty of making such disposition of said means as is herein provided, by will properly executed before her death, it being my intention that so much of the funds herein entrusted to said Mary T. Shields, for her use and benefit during her natural life, as may remain at her death, shall not descend to her heirs, but go, as above provided, to some Catholic institutition or institutions."

The ninth item directs that Mary T. Shields "shall take and hold, for the purposes mentioned in the seventh subdivision [item] of this will," certain real estate, "or the proceeds which may arise from the sale of said property."

The plaintiffs are the heirs at law of Mary Tally. They allege in their petition that The Sisters of the Humility of Mary, which is claimed to be a corporation organized under chapter 2, title 9, of the Code, which provides for the organization of corporations other than those for pecuniary profit, is not, by its articles of incorporation, intended or required to act for any of the purposes specified in the chapter of the Code referred to, or for any public charity or purpose, but exercises its powers for adequate compensation, and for private gain to itself or to its individual members. It is claimed in the petition that the incorporators, as is shown by the articles of incorporation, have and are to have no associates, or accession to their numbers, and that the incorporation does not hold its property in trust, but as an absolute owner, having power to manage, control, and dispose of all property for the benefit of itself and the incorporators.

It is also claimed that the devise to the corporation is not by its terms in trust, but is an unqualified gift, without any direction or obligation imposed to use the funds for any charity.

It is also shown that the will is witnessed by Ellen Galvin, one of the incorporators, who has ever since been a

member of the incorporation, and that, as but one other witness attests it, the corporation cannot take under the will, by reason of the alleged fact that Ellen Galvin is not, as is required by the statute, a disinterested and competent witness. This claim is based upon the allegation of the petition above set out.

It is alleged in the petition that the bequest in the seventh item, and the devise in the ninth, are void for uncertainty, inasmuch as the will does not indicate the persons or objects for which the funds and property shall be appropriated.

It is shown by an amendment to the petition that the incorporators, who are the only members of the corporation of The Sisters of the Humility of Mary, are all aliens, and none of them are citizens of the United States and of this state. For this reason it is claimed that they are not authorized by the laws of this state to become an incorporated body.

The defendants, the executors named in the will (Mary T. Shields being one of them), which has been admitted to probate, and the legatee and devisee named in the sixth, seventh and ninth items of the will as above shown, demurred to the petition, on the ground that it fails to show facts entitling plaintiff to the relief claimed. The demurrer was sustained. The case is before us for determination upon the pleadings.

II. It will be observed that the petition assails the respective items of the will on different grounds. 1. The bequest to The Sisters of The Humility of Mary is claimed to be void, for the reason that Ellen Galvin, one of the two witnesses to the will, is not competent and disinterested. The claim is based upon the ground that the corporation is not a charitable institution, but is a private corporation for profit, and the witness to the will has a property and interest in its assets. 2. The incorporators and members of the corporation are not citizens of the United States and of this state. 3. The bequest and devise to Mary T. Shields is

claimed to be void for uncertainty. We will proceed to con-
sider these grounds of objection to the will.

III. We will proceed to enquire whether Ellen Galvin,
under the facts of the case as disclosed by the allegations of
the petition, is a competent and disinterested
witness to the will. It may be premised that
the questions relating to the character and pow-.
ers of the corporation of the Sisters of Humility
of Mary, and whether it is a corporation for charitable pur-
poses or for pecuniary profit, relate alone to the question of
the competency of the witness to the will. If she is a com-
petent witness, and there is, on the grounds of her interest,
no objection to the will, the corporation will take the prop-
erty without regard to its character and powers.

*1. WILL: devise to charitable corporation; competency of corporator as witness.*

The allegations of the petition, urging the objections to
the will on the ground of the interest of the witness, are
all based upon or refer to the articles of incor-
poration of The Sisters of the Humility of Mary.
It becomes necessary to consider these articles,
in order to determine the question before us. This can be
better and more fairly done by setting out in full the articles
of incorporation, which are in the following language:

*2. CORPORATION: whether for charity or for profit.*

"Articles of Incorporation of The Sisters of the Humility
of Mary, made and adopted this eleventh day of May, 1878,
in accordance with the provisions of Chapter 2, Title IX, of
the Code of Iowa, A. D. 1873:

"ART. 1. The name of this corporation shall be 'The
Sisters of the Humility of Mary.'

"ART. 2. The territory of its business shall be the state
of Iowa, with its principal place of doing business Ottumwa,
Wapello county, state of Iowa.

"ART. 3. The incorporators are, Mary Catherine Manjean,
Mary Lawler, Ellen Galvin, Ellen Wogan, Anna Patterson,
Margaret Burke, Jane Mangan and Josephine Gerardine.

"ART. 4. The object and purposes of this association are
to afford a greater opportunity and more security to the in-

corporators and their successors, in the establishment and management of hospitals, schools, asylums, and other institutions, for the relief, education and care of the poor, the needy, the distressed, the orphan, and the ignorant.

"ART. 5. The business, funds and property of this association shall be managed, controlled, protected and preserved by a council of three, chosen from the members of the association, who shall hold their offices for three years, and until their successors are duly elected and qualified, and the council of three for the first three years shall consist of Mary Catherine Manjean, Mary Lawler and Ellen Galvin.

"ART. 6. The persons named in Article 5 shall, within three days after the incorporation of this body—or as soon thereafter as they conveniently can—and the members of each succeeding council shall, within a like time after their election, proceed to elect by ballot from their number, for the ensuing three years, a Superior, and to appoint such other officers and agents as they may deem expedient and necessary, and who shall hold their offices and agencies for the term of three years, and until their respective successors are duly appointed and qualified, or, if they are appointed for a less time than three years, then for the time they may be appointed, unless sooner discharged.

"ART. 7. The council of three shall have power to adopt by-laws and regulations as they may deem proper for the control and management of the hospitals, schools, asylums, and other establishments under their care and control, and the efficient government of their own council, and the officers, and agents appointed thereby, such by-laws, rules and regulations, not being contrary to these articles, the laws and constitution of the United States and of the state of Iowa, and the said council may do and perform everything proper and necessary to be done to carry out the objects and purposes of this association, but in no case shall any officer or agent of this association be paid any sum for her services as such.

"ART. 8. The parent house in this state, and the principal place of doing business, shall be located at the city of Ottumwa, in the county of Wapello, Iowa.

"ART. 9. The association shall have full power and authority to acquire, possess, hold, use, and enjoy by gift, grant, devise, bequest, purchase or otherwise, real estate or personal property, and shall have power to sell, convey, mortgage and dispose of the same in any manner the said association shall deem best for the interest of the association and the furtherance of the objects and purposes for which their association is created.

"ART. 10. This corporation shall have a seal, on which shall be engraved the words 'The Sisters of the Humility of Mary, Ottumwa, Iowa,' and which shall evidence its official and corporate acts.

"ART. 11. This corporation shall have power to sue and be sued, to make contracts, and in general to do all the acts of a natural person, which may be necessary to carry out its objects and purposes.

"ART. 12. This corporation shall endure for twenty years, as provided by Sec. 1069 of the Code of Iowa, of 1873, and shall have the privilege of re-incorporating, as provided by Sec. 1102 of said Code, and in general shall enjoy all the powers, privileges and immunities and benefits provided for by the laws of the state of Iowa, for the purpose for which it is created."

The fourth article of the foregoing instrument declares that the purpose of the association is to enable the incorporators to establish and manage hospitals, schools, asylums, and "other institutions, for the relief, education and care of the poor, the needy, the distressed, the orphans and the ignorant." These objects are all essentially charitable, and are never pursued, when under the care of religious sects, whether Catholic or Protestant, with the view of pecuniary profit. The distribution of dividends to corporators or others arising from the earnings or profits of such institutions is an unheard of

thing. The idea of making money out of such institutions, where, as in the case before us, they are established and supported "for the relief, education and care of the poor, the needy, the distressed, the orphans and the ignorant," could never have been entertained.

There is nothing in the articles of incorporation disclosing any such a purpose. On the contrary, the instrument, considered in the light of the public history of such institutions, shows that there was no such purpose on the part of the incorporators. Article 7 declares that the officers and agents of the corporation shall receive no compensation for services rendered. It is true that pupils in the schools, or patients in the hospitals, may, as is claimed, in some instances or in most instances, pay the institution for services rendered. But it does not follow that the sums so secured, or any part of them, may or can be divided as profits. It is true that all such institutions, when established by religious sects, are endowed by funds given or bequeathed by the benevolent, and it is also true that they cannot be successfully conducted without such endowments. It clearly appears that the incorporators of the association in question can receive no dividends or profits therefrom. The witness to the will, therefore, has no pecuniary interest, based upon the right or expectation of receiving dividends or profits.

But it is urged that, upon the dissolution of the corporation, its assets will be divided among the corporators, and, for that reason, the witness has an interest in the property bequeathed by the will. For the purposes of the case, let the position be admitted, though we do not so hold, and, to say the least of the proposition, it is extremely doubtful.

But such interest is uncertain and contingent. It depends upon whether the witness will survive the dissolution of the corporation; whether it will, when dissolved, have any assets to distribute, or whether it may not by reincorporation continue to hold the funds indefinitely. The interest, to disqualify the witness to a will, must be present, certain and

vested. See *Hawkins v. Hawkins*, 54 Iowa, 443. In that case, it is held that a wife has no such interest in a legacy to her husband as will disqualify her to witness the will. Yet, surely, the interest of the corporator signing the will in this case as a witness is not less remote, uncertain and contingent than the interest of a wife in a bequest to her husband.. We conclude, therefore, that Ellen Galvin is a competent and disinterested witness to the will involved in this case.

IV. It is urged that, as the incorporators and present members of the corporation of The Sisters of The Humility of

*3. WILL: devise to corporation: illegal corporate organization.* Mary are not citizens of the United States and of this state, the will, so far as it requires the notes and mortgage executed to the decedent to be canceled, is void. The thought upon which the position is based is that, as the statute, Code, § 1095, requires corporators of associations to be citizens of the United States, and at least a majority of them to be citizens of the state, the corporation has no legal existence, and therefore it cannot resist plaintiffs' claim made in this action. The repetition of certain facts in this connection will aid a clear understanding of our conclusions upon this point, and the reasons upon which they are based. The Sisters of the Humility of Mary, as a corporation, executed a note and mortgage to the decedent, Mary Tally, of whom plaintiffs are heirs. The sixth item of the will in question directs that the note and mortgage be cancelled and surrendered to the Sisters without payment. Plaintiffs claim that the note and mortgage should be regarded as assets, not subject to the will, but subject to distribution to the heirs of decedent.

They do not claim that these instruments are invalid and not binding, upon the ground of the illegal organization of the corporation, or for any other reason. On the contrary, we understand that they insist that they are capable of being enforced. If they are void, it would be a vain thing for plaintiffs to contend about the direction they take, whether to the legatee or the heirs. We have, then, the case of the

plaintiffs insisting that the note and mortgage are valid, but that the bequest directing their collection is void, for the reason that the corporation is not legally organized.

Code, section 1089, provides that "no body of men acting as a corporation shall be permitted to set up the want of a legal organization as a defense to an action against them as a corporation; nor shall any person sued on a contract made with such corporation, or sued for an injury to its property, or a wrong done to its interests, be permitted to set up a want of such legal organization in his defense."

This provision, it will be observed, sustains plaintiffs' position that the note and mortgage cannot be resisted by the Sisters on the ground that they are not legally incorporated.

The provision goes further, and declares that, in an action brought by a corporation upon contract, or for injury to its property, or "for a wrong done to its interest," the defendant cannot plead in defense the want of legal organizanition of the plaintiff corporation. The purpose of the section is to provide that the enforcement of rights against corporations, and the enforcement by a corporation of contracts made with it, and the recovery of claims for "a wrong done to its interest," cannot be defeated on the ground that the corporation was not legally organized. It cannot be claimed that these provisions apply only when the corporation, or the person contemplated in the section, is defendant in an action. But if the rights contemplated in the section are attempted to be enforced in an action, the provisions apply, whether the person claiming them is a plaintiff or a defendant. It often happens that rights to property, or rights under contracts, or "a wrong done to the interest" of a person, are enforced by defendants to actions. In such case the provision applies.

Is the subject matter of this action, so far as the Sisters' corporation is concerned, of such character as to bring the case within the rule of this section? It involves the right of the corporation to the securities bequeathed in the sixth item

of the will.   The Sisters insist on the enforcement of this item; plaintiffs insist that it is void, and resist its enforcement by asking that it be declared void by a proper decree of the court.

The contest is over the right based upon that item.   It is in the nature of a contract, which, "in its more extensive sense, includes every description of agreement *or obligation* whereby one party becomes bound to another to pay a sum of money, or to do or omit to do a certain act; *or a contract is an act which contains a perfect obligation.*"   Bouvier's Dictionary. It is said in Chitty's Contracts, p. 1, that "the term *contract* comprises, in its full and more liberal signification, every description of agreement, *obligation, or legal tie,* whereby one party binds himself or becomes bound, expressly or impliedly, to another to pay a sum of money, or to perform or omit to do a certain act."   An obligation of record, as a judgment, recognizance, or the like, is included within the term contract.   A bequest falls within the term, and when the will is admitted to probate it is to be regarded as a contract of record.   It follows that, where a corporation seeks to enforce a bequest in a will duly admitted to probate, its claim cannot be resisted on the ground that it has not been legally organized. This is the precise case before us.   In this action, the corporation ask that the will be enforced; the plaintiffs seek to set it aside on the ground of illegality in the corporation's organization.   But on that ground its validity cannot be questioned, as we have seen.

This construction of the statute in question is demanded by justice and the interest of the public.   Corporations defectively or illegally organized may acquire great property interests in personal and real estate and choses in action. Their business is conducted and property managed in the same manner as though they were legally organized, and the interest and rights of all parties dealing with them are involved. If, in an action to enforce any right held by a corporation, it were declared to have no legal existence, great confusion and

lossess would result, not only to its members, but to persons having dealings with it.

This view does not ignore and disregard the statutes prescribing the manner of organizing corporations, or providing as to the character of the persons who shall be incorporators. These statutes may be enforced by proper proceedings at law by *quo warranto*, and if it be found that a corporation is not legally organized, and should be ousted of its franchises, and dissolved, trustees will be appointed who, under the direction of the court, will protect the creditors of the corporation and all persons interested in its property. See Code, § § 3345, 3360, 3367.

V. We come now to the consideration of the bequest 4. DEVISE for life : and devise found in the seventh and ninth items disposition of remainder of the will. They need not be separately re- by will of devisee. ferred to in our discussion of the principles of law, the same doctrines applying to both.

It plainly appears that in these items a life estate in the real property, and the income arising from the personalty during the life of Mary T. Shields, are willed to her. This is not denied by either party. The only question in dispute is this: Does the will so dispose of the estate in remainder in the realty, and the funds that shall be found upon the death of the devisee and legatee, that the court will enforce its provisions. Counsel for plaintiffs insist that these items of the will are void for uncertainty. This statement discloses the question for our decision in this branch of the case.

It is first insisted by plaintiffs' counsel that the objects and charities mentioned in the will, to which the real estate and funds are to be appropriated, are so uncertain that the law will not and cannot effectuate the intentions of the testator, and enforce the will. The foundation of this position is that the will does not, with sufficient certainty, indicate the beneficiaries of the charity.

Reading the items of the will in question, we discover the testament in the following language: "I desire, and my will

is, that the principal of the securities in this subdivision of my will mentioned, and so much of the interest arising therefrom as may remain in the hands of said Mary T. Shields, unexpended, shall go to the support and encouragement of such worthy and meritorious charitable and educational and religious institutions of the Roman Catholic faith, as my said friend, Mary T. Shields, may determine." The beneficiaries of the charity of the testator are here clearly indicated to be "such worthy and meritorious" institutions of the "Roman Catholic faith," as may be determined by Mary T. Shields. The will does not specifically name the persons or institutions that are to receive the charity. It leaves the beneficiaries to be chosen and named by the person appointed to distribute the charity. It is competent for a testator to bestow a charity upon a person or institution to be chosen or named by a trustee or executor. In that case, there is no uncertainty of the beneficiary, for the courts, when called upon to enforce the testament, will be advised of the direction of the charity by the act or declaration of the trustee or executor. Wills providing for the distribution and appropriation of charities in this manner are always upheld by the courts. Perry on Trusts, § 731; 2 Redfield on Wills, (2 Ed.,) p. 530–535; *Hesketh v. Murphy,* 35 N. J. Eq., (8 Stewart,) 23; and see cases cited in note by reporter; *Wells v. Doane,* 3 Gray, 201; *Brown v. Kelsey,* 2 Cush., 243; *Saltonstall v. Sanders,* 11 Allen, 446; *First Universalist Society of North Adams v. Fitch,* 8 Gray, 421; *Going v. Emery,* 16 Pick, 107; *Miller v. Teachout,* 24 Ohio St., 525; *Am. Tract Soc. v. Atwater,* 30 Ohio St., 77; *De Bruler v. Ferguson,* 54 Ind., 549; *Com. of Lagrange Co. v. Rogers,* 55 Ind., 297; *Pickering v. Shotwell,* 10 Pa. St., 23; *Witman v. Lex,* 17 S. & R., 88; *Beaver v. Filson,* 8 Pa. St., 327; *Perin v. Carey,* 24 Howard, 465; *Loring v. Marsh,* 6 Wall., 337.

An elaborate note to *Hesketh v. Murphy, supra,* by the reporter and another, found in the Am. Law Register, Vol.

21 (N. S.), p. 660–666, (October, 1882,) cites scores of cases holding that similar dispositions of charities by will are valid.    It also gives quite a number that may be cited against the doctrine.    We doubt not, however, that the conclusion we reach is supported by the great weight of authority.    The facts of this case distinguish it from *LePage v. McNamara*, 5 Iowa, 124.

We reach the conclusion that the will is not void for uncertainty of the beneficiaries of the charity.

VI.    We are to inquire whether there is a *trustee* named in the will, whose act or designation will render certain the beneficiaries of the charity.    This may be admitted, for the purposes of the case, without so deciding, to be necessary.    Counsel for plaintiffs insist that the will provides for no such trustee.    We think the contrary clearly appears, and that the instrument in the plainest terms names Mary T. Shields as such trustee.    The language of the will following that last quoted is as follows:    "She [Mary T. Shields] is charged with the duty of making such disposition of said means as is herein provided, by will properly executed before her death, it being my intention that so much of the funds herein entrusted to said Mary T. Shields for her use and benefit during her natural life, as may remain at her death, shall not descend to her heirs, but go, as above provided, to some Catholic institution or institutions."

THE SAME.

It cannot be doubted that, if the words "by will properly executed before her death" had been omitted, the language would have clearly indicated the creation of a trust, and directed its execution.    But counsel for plaintiff urge that, as these words limit the power of Mary T. Shields to make the appropriation of the charity and designation of the beneficiaries by will, she cannot, therefore, be regarded as a trustee.    There is no force in this position for these reasons: Suppose Mary T. Shields should waive her life estate and interest in the property, can it be doubted that she could then

indicate the beneficiaries to receive the charity? Or can it be doubted that she has the right and power to surrender her life estate? In case she should do so, the trust could be executed by her in her life-time. Can it be said that she will not do so? Surely chancery will entertain no such presumption.

But we are able to discover no reason why the trust may not be executed by a will, as permitted or contemplated by the language of the testament before us. Indeed, the provision seems to have been suggested by common sense, seeking to effectuate the intention of the decedent. She intended that Mary T. Shields should enjoy the property during her life, and she further intended that the same power should direct the charity to the beneficiaries who should finally receive it. When Shields' rights shall cease, she will be no more in life, and will, therefore, be incapable of then naming the beneficiaries. But property may be disposed of by will, and the decedent, in the exercise of good common sense, chose that character of disposition on the part of Shields which would perfectly carry out the intention of the testator. We know of no legal principles which will defeat the will on this ground, and have been referred to no authorities so holding. The authorities hold, we think, that a power relating to a trust may be executed by a will, where the power creating the trust so provides. See 4 Kent's Com., *330; 2 Hilliard's Real Prop., p. 563, § 41; 2 Greenleaf's Cruise on Real Prop., p. 534, § 16; 1 Jar. on Wills, p. 547; 1 Story's Eq. Jur., § 173, and notes. These authorities go to the extent of holding that, when no form for the execution of the power is prescribed, it may be executed either by deed or will.

VII. It is urged that Shields may not execute a will, and in that case the court cannot enforce the will, for the reason of the uncertainty that will exist as to the beneficiaries of the charity. We cannot presume that the trustee will neglect to discharge the duty imposed upon her of naming by will the beneficiaries, but, on the contrary,

THE SAME.

must presume that she will, in the discharge of her duty, indicate by testament the objects to which the charity shall be appropriated. But, at all events, that question cannot now be anticipated. It will be time enough to meet it when Shields dies without making the disposition of the property by will, if such a thing should happen.

VIII. It is insisted that Shields, by the will, takes no title to the real estate mentioned in the ninth item. This **5. TRUST estate by will: words to create.** position is based upon the thought that she is not made a trustee by the will. But, as we have shown, she is regarded as a trustee. The objection, therefore, falls. In order to create a trust estate by will, the law requires no particular form of words to be used by the devisor. If his intention is sufficiently disclosed, that the property shall be held and disposed of by the trustee named, a trust estate vests in the trustee under the will. .

The foregoing discussion disposes of all questions necessary to be considered in the disposition of this case, and brings us to the conclusion that the judgment of the district court ought to be

AFFIRMED.