93 92
93 465
94 460

93 92
114 462

93 92
121 82
121 85
121 86
121 88

93 92
142 438

## Mary J. Phillips, *et. al.*, v. A. C. Harrow, *et. al.*, Appellants.

**Wills: Trusts:** MUNICIPAL CORPORATIONS may take a devise in
1 trust to maintain a foundling hospital to relieve unfortunate females and care for their offspring.

SAME. And one for distribution among its religious denominations, without regard to sect.

SAME. The taking is not prevented because the will provides that a
2 hotel, which is part of the estate bequeathed, shall be perpetually maintained by its then name, and that a fund shall be provided to preserve and improve it.

SAME. And so when a fund is ordered to be made out of the devise to aid a public library.

SAME. And so, though the library is one by an association privately incorporated, where it was not authorized or kept for pecuniary
3 profit, though books can only be taken out by regular subscribers who pay a prescribed fee, or non-subscribers, who pay by the book.

PRECATORY WORDS. A provision concerning the erection of a library
9 building by the managers, is not obligatory, but suggestive.

**Description: Certainty.** Devises for "poor and needy people" of a city "who are dependent upon their own labor for a livelihood,"
4 for religious societies of said city, without regard to sect, who prefer to work for the good and well being of mankind, "and for
5 building and maintaining of a foundling hospital to relieve unfortunate females and protect their offspring," describe beneficiaries with sufficient certainty.

SAME. If a permissive provision does fail to describe beneficiaries
6 with sufficient certainty, it will not invalidate other parts of the will or disturb a vested title.

**Perpetuities.** The rule does not, generally, apply to devises for charitable purposes. Code, 1920, providing that a testator's dis-
7 position is void which suspends the absolute power of control for longer than the life of persons then in being and twenty-one years thereafter, does not apply when property has vested by probate. It deals alone with cases where wills suspend vesting.

**Trustee:** DECLARATION. Where courts have power to appoint, a will
8 is not invalid by the refusal of a trustee to serve.

*Appeal from Wapello District Court.*—HON. E. L. BUR-
TON, Judge.

TUESDAY, DECEMBER 18, 1894.

Action in equity to set aside the probate of two
paragraphs of the will of P. G. Ballingall, deceased, and
to have them decreed to be void and of no effect. The
relief demanded was granted in part, and the executors
of the will, the defendant the Ottumwa Library Associa-
tion, and the plaintiffs appeal, the appeal of the execu-
tors and the library association having been first taken.
—*Modified.*

*Wm. McNett, W. H. C. Jacques,* and *J. W. Lewis*
for appellants.

*W. W. Cory, Seevers & Seevers,* and *McElroy &
Roberts* for appellee.

Robinson, J.—The will of the decedent contains
twelve paragraphs. The first seven provide for the
distribution among various relatives and other persons
named of real and personal property, including the pay-
ment in money of nine hundred dollars to Mattie J.
Thomas; also of seven thousand five hundred dollars
to Mary J. Phillips, to be paid from that portion of the
estate known as the "Ballingall Hotel Property" and
other property devised to the city of Ottumwa, when
the whole amount can be paid to her without seri-
ous detriment to that portion of the estate, and until
that time, interest on that amount at the rate of six per
cent. per annum, payable semi-annually. But the leg-
atee was to pay the burial expenses of the decedent, and
all charges connected therewith, and all his just debts
except those secured by mortgage upon real estate.

The sixth and seventh paragraphs of the will bequeathed various other sums, which amounted to one thousand three hundred dollars, and provided for the payment to J. R. Harmon during his natural life of the sum of two hundred dollars each year. The eighth and ninth paragraphs are the ones assailed by the plaintiffs, and are as follows:

"Eighth. To the Ottumwa Library Association I give, devise, and bequeath the sum of two hundred dollars per annum until further endowed as hereinafter provided, the same to be paid quarterly. Also a strip of ground off of outlot thirteen (13) in the city of Ottumwa, Iowa, being thirty-four (34) feet front on Main street and extending back the same width to right of way of the Chicago, Rock Island & Pacific Railway, and southeast line thereof is ten and one-half (10½) feet northwest of that part of said outlot thirteen hereinbefore devised to Mary J. Phillips. The said strip of ground is numbered as lots five and six (5 and 6) on plat referred to in first clause of this will. The ten and one-half feet lying between the ground herein devised to said association and that devised to said Mary J. Phillips is marked on said plat as an alley, and is now devised to said association and Mary J. Phillips, to be used as an alley. This devise to the said Ottumwa Library Association is upon the express condition that the said ground shall be used for the purpose of erecting thereon a building for the use and benefit of a public library as hereinafter provided.

"Ninth. All that portion of my estate known as the 'Ballingall House Property,' being lot three hundred and thirty-seven (337) and the northwest twenty-two and one-half feet off of lot three hundred and thirty-eight (338) in the city of Ottumwa, Iowa. Also the northwest twenty-two feet, more or less, off of lot three hundred and thirty-nine (339) (being the prop-

erty known as the 'Magnolia Restaurant') in the city
of Ottumwa. Also the one acre of ground, more or
less, upon which is situated what is known as the 'Pony
Pork House,' now used as a pickle factory, in the city
of Ottumwa, Iowa. Also all that part of outlot thir-
teen (13) not hereinbefore devised. Also the northwest
forty-four (44) feet off of lot three hundred and seventy
(370) in the city of Ottumwa, Iowa. I will and devise
to the city of Ottumwa, Iowa, subject to the charges
herein and mortgages thereon, in trust for the following
uses and purposes, namely: To be managed and con-
trolled by three trustees, to be named and selected by
the city council of said city, and to serve respectively
as follows: One for one year, one for two years, and
one for three years, and after that, one to be selected
annually for three years. And at no time shall there
be more than two of said trustees of the same political
party. But nothing herein contained shall disqualify
any of said trustees from being his own successor.
Said trustees shall give bond in double the amount they
are expected to handle, to be approved by the city coun-
cil, and said trustees shall receive for their services
such compensation as may be allowed and fixed by the
city council. The duties and powers of said trustees
shall be as follows: The Ballingall House and tene-
ments connected therewith are, under the supervision
of said trustees, to be kept up perpetually and forever;
the hotel retaining the same name which it now bears.
The southeast one hundred and ten (110) feet of that
part of outlot thirteen devised is to be used and kept
up under the supervision of said trustees as a park,
without expense to my estate. Said one hundred and
ten feet of outlot thirteen is represented upon the plat
referred to in the first clause of this will as lots seven
(7), eight (8), nine (9), ten (10), and eleven (11). The
twenty-two (22) feet of ground lying northwest thereof,

and represented on said plat as lot twelve, shall be leased by said trustees to any suitable person who will use the same for a flower conservatory. If not so leased, the same shall be used by said trustees in connection with said park. All the other property herein devised and placed in charge of said trustees may by them, with the authority and approval of the city council, be leased for any length of time, or be by them sold, and I so direct, whenever it can, in their judgment, be done to good advantage. The purpose and object of this provision is to provide, in the first place, under the supervision and management of said trustees, a sinking fund of twenty thousand dollars ($20,000.00), for the purpose, with insurance, proceeds, and other accumulations, of rebuilding property in case of fire, or of remodeling the hotel building to suitably keep up with the times and the growth of the city. I further direct, that after the founding and accumulation of said sinking fund before named, the said trustees, from the interest derived therefrom, together with the rents and incomes that may be yielded by and from said Ballingall House property and other property above described, a second fund of six thousand dollars ($6,000.00) shall be raised and founded for the express use and purpose of maintaining the public library now established in the city of Ottumwa, and for the aid and increase of the same. And I here suggest that the management of said library, as soon as possessed of sufficient funds from this bequest or otherwise, erect on the ground hereinbefore devised for that purpose a suitable library building, in such manner that rentals may be derived from such parts as are not needed for the library, for the increase and assistance of its revenue. But should the said library association refuse to accept or use the said ground for the purpose for which it is devised, then I direct, and my will is, that the same shall go to the city

of Ottumwa, Iowa, for the sole purpose of being used as a part of the park above provided for. After the founding of the perpetual sinking fund of twenty thousand dollars as hereinbefore provided, and the expenditure of the further fund of six thousand dollars to be raised as above directed for the benefit of the public library of Ottumwa, I hereby will and direct that under the supervision of the trustees hereinbefore provided for all accumulations arising from the rents of the said Ballingall House property and the other property above described, from the remainders returning from my general estate from the life estates hereinbefore devised or bequeathed, from all funds or sources that may otherwise fall in or accrue to the residuum of my estate, and all other property not herein devised, or that I may possess, shall go and be devoted under the direction of said trustees to the following uses and purposes, annually: One-fourth to and for the further benefit of the library association hereinbefore named. One-fourth to poor and needy people of the city of Ottumwa, Iowa, who are dependent upon their own labor for a livelihood. One-fourth to the religious societies of said city, without regard to sect, and to include all denominations professing to work for the good and well-being of mankind. One-fourth to the accumulation of a fund to build or aid in the building and maintenance of a foundling hospital, with the special view and purpose of relieving unfortunate females, and for protecting and caring for their offspring. But I direct and authorize that a part or all of the funds just mentioned may be temporarily changed and diverted for the public good in case of fire, flood, epidemic, or other distress."

The eleventh paragraph is as follows: "Eleventh. The nine hundred dollars bequeathed to my sister, Mattie J. Thomas, by the third clause of this will, is to be

paid her out of my bank account or money on hands at my death before any other claims or bequests are paid; and after the payment thereof my said bank account and money shall be used for the purpose of paying the bequests named in the sixth, seventh, and eighth clauses of this will, and the remainder of such bequests and annuities unpaid after exhausting said fund shall be paid out of the rents or income of the Ballingall House property and the property above devised to the city of Ottumwa. The two hundred dollars annuity given by the eighth clause of this will is to cease when the fund or bequest of six thousand dollars provided by clause ninth thereof, shall be raised." The tenth paragraph refers to memorials of various kinds, and is not in controversy. The twelfth is as follows: "Twelfth. For the purposes of aiding the private devises and bequests herein, and so far as may be necessary, the trustees hereinbefore provided for, I appoint Mary J. Phillips, A. G. Harrow, and Chas. A. Walsh, all of Ottumwa, Iowa, executors of this my last will and testament." The District Court decreed the devise of real estate to the Ottumwa Library Association and to Mary J. Phillips contained in the eighth paragraph of the will to be valid, subject to the conditions, limitations, and exceptions contained in the will. The bequest of two hundred dollars per annum to the library association, contained in the eighth paragraph, the devise of real estate to the city of Ottumwa, contained in the ninth paragraph, and the provisions thereof in regard to trusts and sinking funds, with all devises and directions given thereon, were decreed to be void, and the title to the real estate described in that paragraph and to the rents and profits thereof was adjudged to be in the heirs of the decedent. The plaintiffs are heirs of the decedent. The defendants include the executors of the will, the Ottumwa Library Association, the city of Ottumwa,

and two persons, one of whom it is supposed may be an heir of the decedent.    The city and the two persons last designated do not appeal.

I.    The will devises to the city of Ottumwa, subject to mortgages thereon and charges specified, the real estate described in the first part of paragraph 9 "in trust" for the purposes specified.    The property so devised is to be managed and controlled by three trustees, to be selected by the city council.    Among the purposes of the trust are the following:    (1) To provide a sinking fund of twenty thousand dollars for the purpose of rebuilding property in case of fire and remodeling the hotel building "to suitably keep up with the times and the growth of the city;" (2) to provide a fund of six thousand dollars for the benefit of the public library then established in the city of Ottumwa; (3) to use a part of other funds for the further benefit of the public library association; (4) to aid the poor and needy people of the city of Ottumwa who are dependent upon their own labor for a livelihood; (5) to aid religious societies of the city; (6) to accumulate a fund to build or aid in building and maintaining a foundling hospital.    It is claimed that these purposes, excepting that with respect to the library, are not germane to the objects of the city, and that it has not the power necessary to take the property and execute the trust.    It is said in section 55, 2 Dill. Mun. Corp., that "it is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others:    First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable.    Any fair, reasonable doubt concerning the existence of power is resolved by the

courts against the corporation, and the power is denied." In *City of Burlington v. Kellar*, 18 Iowa, 65, it is said to be "a well settled rule that the authority conferred upon municipal corporations is to be strictly construed, and must be clearly pursued." This court has in several cases held that acts of municipal corporations were invalid because not expressly authorized by statute. *City of Burlington v. Dankwardt*, 73 Iowa, 170, 34 N. W. Rep. 801; *City of Chariton v. Barber*, 54 Iowa, 360, 6 N. W. Rep. 528; *Field v. City of Des Moines*, 39 Iowa, 575. But it is said that the defendant has an implied power to take property and execute trusts as provided by the will. Cities and towns organized under the laws of this state have power to "sue or be sued; contract or be contracted with, acquire and hold property real and personal; * * * and have such other privileges as are incident to municipal corporations of like character or degree, not inconsistent with the laws of the state." Code, section 454. They also have the power to enact ordinances to promote the prosperity, improve the morals, order, comfort, and convenience of the corporation and of its inhabitants. Code, section 482. They may establish and maintain free public libraries, and may receive gifts, devises, and bequests for their benefit. Code, section 461. They may also provide for parks. Acts Twentieth General Assembly, chapter 151. Cities of the first class may establish and maintain infirmaries for the poor, and also distribute to the poor outdoor relief. Code, section 538. There is no provision for the maintenance of foundling hospitals. Yet that contemplated by the will is to be for the special purpose of relieving unfortunate females, and protecting and caring for their offspring; and such persons, when requiring aid, may well be classed as of the poor. Municipal corporations have no power to appropriate

or otherwise use public money for the benefit of any institution, association, or object which is under ecclesiastical or sectarian management. Code, section 552. But, as we have seen, they may do what will tend to promote the prosperity, improve the morals, comfort, and convenience of their inhabitants. The money appropriated by the will for the religious societies is to be distributed among them without regard to sect, and without partiality, the test of distribution being that the recipients be religious societies professing to work for the good and well-being of mankind. It is scarcely necessary to say that the purposes of such societies are universally to improve the morals and promote the interests of mankind, and that the work they do is, as a rule, of a nature to accomplish these purposes. Such purposes are in entire harmony with the objects for which municipal corporations are created, and, while they may not use public money for purposes of that kind, yet it is not inconsistent with the laws of the state to use money or other property given by private individuals for such purposes, where it is not used to benefit one denomination to the harm of another, or to promote purely sectarian purposes. Whether Ottumwa was a city of the first class when the will took effect we are not advised, nor is the fact material in this case; for, even though it had not the power to establish infirmaries for the benefit of the poor, to establish and maintain them was recognized by the law as a proper municipal object, although the right to do so at the public cost was restricted to cities of the first class. It is not, therefore, inconsistent with law, but in harmony with it, for municipal corporations to use private funds, given for the purpose, to aid the poor.

The requirement of the will that the Ballingall House and the tenements connected therewith shall be kept perpetually and that a fund of twenty thousand dollars be provided to preserve the

property and make such improvements in the hotel building as shall be demanded by the growth of the city and the times, is merely a means to preserve the property in a condition to yield a revenue, and thus secure the charitable objects sought to be accomplished by the will. That the name "Ballingall House" should be retained is not inconsistent with such objects, and imposes no burden on the trustee. The obligation to raise a fund of six thousand dollars for the benefit of a public library is germane to the objects of the city. It was said in *Jones v. Habersham*, 107 U. S. 188, 2 Sup. Ct. Rep. 336, that a "corporation may hold and execute a trust for charitable objects in accord with or tending to promote the purposes of its creation, although such as it might not by its charter or by general laws have authority itself to establish, or to spend its corporate funds for. A city, for instance, may take a devise in trust to maintain a college, an orphan school, or an asylum." In *Vidal v. Girard's Ex'rs*, 2 How. 189, it was said: "If the purposes of the trust be germane to the objects of the incorporation, if they relate to matters which will promote and perfect and aid those objects," and the corporation has the legal capacity to take the estate as well by devise as otherwise, the trust may be assumed and executed by the corporation, "even though the act of incorporation may have for its main object mere civil and municipal government and regulating powers." See, also, *McDonogh's Ex'rs v. Murdoch*, 15 How. 367; *Attorney General v. Parker*, 126 Mass. 221; *Perrin v. Carey*, 24 How. 465; *Davis v. Inhabitants* (Mass.), 28 N. E. Rep. 165; 2 Dill. Mun. Corp., section 437 et seq.

3    It is said that the Ottumwa Library Association is a private corporation, and hence that donations to it are not in the nature of public charities. It was organized as a private corporation, but not for pecuniary profit, and it has never been conducted for

that purpose.   Persons may become subscribers for a
fixed time by paying a prescribed fee, and are then
entitled to take books from the library without the pay-
ment of other fee, but non-subscribers are required to
pay ten cents for each book they take away. In the use
of books and periodicals in the library rooms, no dis-
tinction is made between subscribers and non-subscrib-
ers. Fines are imposed for the violation of rules and for
damage done to books.   But the money collected from
these and all other sources is used to maintain  the
library and to purchase books.   The objects of the asso-
ciation are in all essential respects for public welfare,
and are charitable.   See *Quinn v. Shields,* 62 Iowa, 135,
17 N. W. Rep. 437; 2 Perry, Trusts, section 687.   We
conclude that the purposes of the trust created by the
will are charitable, that they are germane to the objects
for which the city of Ottumwa was organized, and that
it has power to accept the property devised to it by the
will, and to execute the trust thereby created.

II.   The plaintiffs contend that the ninth para-
graph of the will, so far as it attempts to provide
funds for the three charities last named, is
void, because the beneficiaries are not designated with
sufficient certainty.   There is much conflict in the
authorities in regard to the certainty required in such
cases, but the general rule seems to be that less cer-
tainty as to the beneficiaries of a public charity is
required than is necessary in a valid private benefit.
"If a gift is made for a public charitable purpose, it is
immaterial that the trustee is uncertain or incapable
of taking, or that the objects of the charity are uncer-
tain and indefinite.   Indeed, it is said that vagueness
is in some respects essential to a good gift for a public
charity, and that a public charity begins where uncer-
tainty in the recipient begins." 2 Perry, Trusts, sec-
tion 687.   "It is immaterial how uncertain the bene-

ficiaries or object are if the court, by a true construction of the instrument, has power to appoint trustees to exercise the discretion or power of making the beneficiaries as certain as the nature of the trust requires them to be." Id., section 732; 2 Pom. Eq. Jur., section 1025. The case of *Lepage v. McNamara*, 5 Iowa, 141, involved the sufficiency of a devise in the following terms: "* * * I direct and authorize the Right Reverend Bishop Loras or his successors to dispose of my real estate, and apply so much thereof to the church, or to the education and maintenance of poor children, as he in his wisdom may think proper and legal." The action was not in equity to enforce a trust, but at law to recover real property, and it was held that the devise was not effectual to vest any estate or interest in Bishop Loras. But attention was called to the fact that it was not expressed whether the fund was to be applied to the church or to educate and maintain poor children; that no church, nor the poor children of any church, city, or place was designated; and that, if the interested beneficiaries were ascertained, only so much of the fund should go to them as the bishop should think proper and legal. The facts in that case are wholly unlike those involved in this case. The poor and needy people contemplated by the will in question are of the city of Ottumwa, who are dependent upon their own labor for a livelihood. It is true they are not defined in terms so definite as to preclude possibility of error in selecting individual beneficiaries, but the designation is sufficient to make practicable a distribution of the fund according to the intent of the testator, with reasonable certainty that none shall receive of it who are not within the description given by the will. This is also true of the fund provided for the religious societies. The provision for a foundling hospital is not so specific, in that the beneficiaries are not lim-

ited to residents of any designated locality; but that was not necessary. The persons who are intended to be benefited are described with sufficient certainty to enable the trustees to distribute the fund according to the real intent of the testator. The provision which attempts to authorize a temporary change in the use of the fund in case of fire, flood, epidemic, or other distress may, for the purpose of this appeal, be conceded to be too indefinite to create a trust or authorize the use of any of the funds for the purposes specified, but it is permissive only, and is in the nature of a condition subsequent, and will not invalidate other parts of the will, nor disturb title which has become vested. If the funds cannot be used for the temporary purposes indicated, they will remain for the objects for which they were primarily designed. In *Quinn v. Shields*, 62 Iowa, 140, 17 N. W. Rep. 437, a provision of a will was held to be sufficiently definite which was couched in language as follows: "I desire, and my will is, that the principal of the securities in this subdivision of my will mentioned, and so much of the interest arising therefrom as may remain in the hands of said Mary F. Shields unexpended, shall go to the support and encouragement of such worthy and meritorious charitable, educational and religious institutions of the Roman Catholic faith as my friend Mary F. Shields may determine." This court sustained the provision, and said it was competent for a testator to bestow a charity upon a person or institution to be chosen by a trustee or executor, and that wills providing for the distribution of charities in that manner are always upheld. Numerous authorities were cited to sustain that conclusion, and many more might be named, but those to which we have referred are sufficient to illustrate the grounds upon which our conclusions on this branch of the case are, in part, based.

III. It is contended that the devise to the city of Ottumwa of the Ballingall House and the tenements therewith connected is void, because contrary to the provision of section 1920 of the Code, that "every disposition of property is void which suspends the absolute power of controlling the same for a longer period than during the lives of persons then in being and for twenty-one years thereafter." It was said in *Todhunter v. Railroad Co.*, 58 Iowa, 206, 12 N. W. Rep. 267, that this is the provision made in this state against perpetuities, and that it is not essentially different from that which has long been the law of England. The rule relates to the vesting of an estate, and does not affect its continuance after it has become vested. 18 Am. & Eng. Enc. Law, 362. A perpetuity is defined to be "a future limitation, whether executory or by way of remainder, and of either real or personal property, which is not to vest until after the expiration of, or will not necessarily vest within, the period fixed and prescribed by law for the creation of future estates and interests; and which is not destructible by the persons for the time entitled to the property, subject to the future limitation, except with the concurrence of the individual interested under that limitation." Lewis, Perp. 164; 1 Perry, Trusts, section 377; Mars. Perp. 1. It is said: "The true form of the rule against perpetuities is believed to be this: no interest subject to a condition precedent is good unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the creation of the interest." Gray, Perp. section 201. In this case the title to the sum of two hundred dollars, payable annually, vested in the Ottumwa Library Association, and the title to the Ballingall House and tenements therewith connected, and to the real estate described in the ninth paragraph of the will, vested in the city of Ottumwa upon the pro-

bate of the will.  *Devin v. Hendershott,* 32 Iowa, 194.
The providing of the funds of twenty thousand dollars
and six thousand dollars may defer the accumulation
of funds for other objects contemplated by the will, but
that would not defeat them.  If the title vests, the pos-
session may be postponed.  1 Perry, Trusts, section
381.  In general, the rule of perpetuities does not apply
to devises for charitable purposes.  *Jones v. Haber-
sham,* 107 U. S. 174, 2 Sup. Ct. Rep. 336; *Odell v. Odell,*
10 Allen, 6; 18 Am. & Eng. Enc. Law, 362; Gray, Perp.
section 600; Beach, Wills, section 136.  It follows that
the provision is not void as against the statute cited.

IV.  The appellants have made and discussed
various objections to the will, which we do not deem
of sufficient importance, in view of what we have
already said, to set out at length.  What we have said
disposes of the controlling questions in the case.
The fact that the city of Ottumwa may not accept
the trust will not defeat it.  If the city should
refuse to act, ample power is lodged in the proper court
to appoint another trustee.  The description of real
estate contained in the will is sufficient, when aided by
a map of the premises, to identify the property
devised.  The provision in regard to the erection
of a building by the managers of the library does
not create an obligation on their part, but is a sugges-
tion for their consideration, precatory in character.
The fact that there might be delay in accepting and
carrying out various provisions of the will can not
defeat it.  The intent of the testator as to all material
matters is clear, and we discern no legal objection to
carrying it into effect.  Our conclusion on the entire
record is that so much of the decree of the District
Court as is questioned on the appeal of the plaintiffs is
affirmed, and so much as is submitted for review on the
appeal of the Ottumwa Library Association and the
executors is *reversed.*