ROLAND GRANT, Administrator, Appellant, v. WILLIAM A. SAUNDERS, *et al.*, Executors.

1  **Charity Defined.**  A charity must be a gift for a public use.

**Construction of Will:** CHARITABLE BEQUEST.  A bequest in trust
2  for the benefit of the poor to be given to such objects as the trustee may deem worthy, the whole to be used for charity purposes, is a charitable bequest.

**Charitable Bequest:** UNCERTAINTY: SELECTION OF BENEFICIARIES.
3  Where a bequest is specifically made for the benefit of the poor as a class, the fund designated and a trustee appointed, the only uncertainty remaining being the selection of the beneficiaries by the trustee, there is no such uncertainty as will render the gift invalid, as the trustee of the charity may legally select the beneficiaries.

**Same.**  The fact that the trustee of a charitable bequest is not
4  geographically limited in the selection of beneficiaries will not invalidate the bequest.

**Failure of Trustee to Act:** APPOINTMENT BY COURT.  The fact that
5  a will bequeathing to a trustee a fund for the benefit of the poor fails to provide for the appointment by the court of a successor in case of the death, failure or inability of trustee named to act will not invalidiate the charity.

*Appeal from Henry District Court.*—HON. JAMES D. SMYTH, Judge.

MONDAY, JUNE 1, 1903.

THE appellant and others, whom he represents, are heirs of William G. Saunders, deceased, and he brings this

action in equity asking for a construction of the twenty-third clause of the will of Mr. Saunders, which is as follows: "I will and bequeath to Barbary R. Fouche, in trust, the remainder of my estate whatever it may be, for the benefit of the poor, and to be given by her to such objects, as in her judgment is worthy of assistance, from time to time, and at such times and persons as she thinks best to help. This charity fund shall be kept where it will. be safe and at interest, and all to be used for charity purposes, until all expended." A demurrer to the petition was sustained, and a judgment rendered thereon dismissing the action. The plaintiff appeals.—*Affirmed.*

*Palmer & Kopp* for appellant.

*W. A. Saunders* for appellees.

SHERWIN, J.—The appellant contends that the bequest under consideration cannot be upheld for two principal reasons: First, because it is too vague and uncertain as to the beneficiaries; and, second, because it is not a charitable bequest. We shall discuss these propositions in their inverse order.

Charitable gifts have been considered by the courts from the earliest recorded judicial proceedings, and many definitions thereof have been given. Lord Camden defined a charity as "a gift to a general public use, which extends to the poor as well as to the rich." Amb. 651; *Franklin v. Armfield,* 2 Sneed, 305. This definition is at once concise and comprehensive, and has been adopted by the Supreme Court of the United States. *Perin v. Carey,* 24 How. 465 (16 L. Ed. 701). It was also approved by Chancellor Kent in *Coggeshall v. Pelton,* 7 Johns. Ch. 292 (11 Am. Dec. 471).

1. CHARITY defined.

Starting, then, with the proposition that a charity must be a gift for a public use, let us analyze the language of the bequest before us for the purpose of determining

whether it limits the testator's bounty to such use alone.

**2. CONSTRUCTION of will: charitable bequest.** Had he given the remainder of his estate to Miss Fouche, in trust "for the benefit of the poor," without further direction, it could hardly be contended that the bequest was not charitable, whatever might be said as to its validity in other respects; for the relief of the poor and unfortunate has afforded an almost unlimited field for charitable donations, and trusts created for their benefit have almost universally been held to be charitable and valid. *Tappan's Appeal*, 52 Conn. 412; *Williams v. Pearson*, 38 Ala. 299; *Clement v. Hyde*, 50 Vt. 716 (28 Am. Rep. 522); *Suter v. Hilliard*, 132 Mass. 412 (42 Am. Rep. 444); *Jones v. Habersham*, 107 U. S. 174 (2 Sup. Ct. Rep. 336, 27 L. Ed. 401); *Phillips v. Harrow*, 93 Iowa, 92. It is contended, however, that the authority given the trustees to distribute the fund "to such objects as in her judgment" are worthy of assistance, and "at such times " and to such "persons as she thinks best to help," left it optional with her to select any one as the recipient of the testator's bounty, whether within the class designated as "the poor" or not. But to so hold would require a strained and unnatural construction of the language used, and it would further require us to disconnect it from the remaining language of the clause, and construe it without reference thereto. The bequest is specifically stated to be for the benefit of the poor, and the discretion given the trustee to select such objects as are worthy must relate back to the subject of the bequest. The objects which the testator had in mind may have been individuals among the general class named, or some institution or association having for its object the benefit of the poor. It is possible that the latter thought was in the mind of the testator in view of the discretion given as to persons. But, however this may be, it is clear that the dominant thought and intent was that the fund should be devoted to the help of the poor. The further direction

that assistance be given to the persons whom she might think it best to help must also be held to mean those selected from the class designated as "the poor." If we are correct in this conclusion, the bequest is purely a charitable one, and it only remains to determine whether it is so vague and uncertain as to beneficiaries as to render it void.

Counsel for the appellant have explored the entire field of charitable uses and trusts, and have favored us with an historical review of the subject full of interest and instruction. They have argued at length the doctrines of *cy pres* and *parens patriæ*, and contend that the bequest herein cannot be sustained except by the adoption of the rule *cy pres*. But, however interesting the subject may be, a review of its history in England and in this country, and an extended notice of the many cases in which the rule has been discussed, is precluded by the proper limits of this opinion, and, in our judgment, not necessary to the determination of the case. We may, however, briefly state in a general way the rule *cy pres* as applied in the English Chancery Courts. It is applied to sustain bequests "where charity is the general substantial intention" and no object is mentioned, or, if mentioned, fails for any reason, or where the mode provided for the execution of the charity is uncertain and impracticable. 2 Pomeroy, Equity Jurisprudence, 595; Boyle, Char. 147, 155; *Attorney General v. Minshull*, 4 Ves., 14; *Fisk v. Attorney General*, L. R. 4 Eq. 521; 2 Perry on Trusts (4th Ed.) section 718. After an exhaustive examination of the cases both in England and in this country, which are collected and reviewed by Mr. Justice Gray in his opinion in *Jackson v. Phillips*, 14 Allen, 574-594, the learned justice states that in England there are two distinct powers exercised by the chancellor in charity cases under the doctrine of *cy pres*; "the one derived from the royal prerogative, and the other in the

*Margin note: 3. CHARITABLE bequest: uncertainty: selection of beneficiaries.*

exercise of judicial authority." He notices the cases where the disposition of the charity was made by chancery under the royal prerogative, and states that the power so exercised by the English chancery "does not exist in any court in this country." The cases are also reviewed which have applied the doctrine in the exercise of a general equity jurisdiction, without reference to the royal prerogative, and the learned judge states that such application stands upon very different grounds, and is favored both in England and in this country.

In *Vidal et al., v. Girard's Executors,* 2 How. 194 (11 L. Ed. 205), Mr. Justice Story reached the conclusion, after an examination of some fifty of the very early English cases, many of them decided long before the statute of 43 Elizabeth, that charitable uses had been enforced in chancery upon the general jurisdiction of the court independently of the statute of 43 Elizabeth, and was, therefore, a part of the common law independently of that statute. It may be said, then, that wherever, the *cy pres* power has been used by the courts of this country in enforcing charitable bequests, its exercise has been placed upon the ground of general chancery power, entirely separate and distinct from any thought of prerogative power, and for the purpose of carrying out as nearly as possible the true intention of the donor. This distinction may not have been clearly expressed in all of the judicial utterances on the subject, but we think it will be found to be the basis of most, if not of all, of the decisions wherein the doctrine is recognized. In 2 Perry on Trusts, section 724, it is said that, "when the *cy pres* doctrine is reduced to its elements, it becomes a very simple judicial rule of construction; and, as such, courts in all of the states can and do apply it without usurping any prerogative powers." But to sustain the charity in this case we need not go to the extent of recognizing the doctrine, if, indeed, we might do so without conflicting with our own cases. Having

determined that the bequest is a charitable gift to the
trustee for the benefit of the poor as a class, what is in
fact the uncertainty as to the intended beneficiaries;
and there can be no other uncertainty unless it be as to
locality, because the trustee is named, and she is ready
and willing to execute the trust.  The title of the fund
has been placed in her for the purpose of carrying out the
trust, and she has been given the power to select those of
the particular class named who shall receive it.  The fund,
the trustee, and the class are then definite and certain.
All that remains to be done to administer the trust is the
selection of the beneficiaries from the designated class,
and the only uncertainty is as to who they shall be.  The
bequest could not well have been more specific as to the
persons or objects of the testators bounty without destroy-
ing its character as a charity, because uncertainty is one
of the elements of a charitable gift.  1 Perry on Trusts,
section 66; *Phillips v. Harrow, supra.*  And it is settled
in this state that the trustee may legally select the bene-
ficiaries.  *Quinn v. Shields,* 62 Iowa, 129; *Phillips v.
Harrow, supra.*

It is argued, however, that the beneficiaries may be
selected from the whole world, and, being thus unlimited
as to locality, the bequest is void.  We are unable to see
4. SAME.  why this should be so.  If the testator saw fit
to extend his charity beyond the limits of his
own city or state, why should the courts say that he had
no right so to do, and divert his property into other chan-
nels?  During his life he could have given it to whom and
wherever he chose.  No charitable object was so distant
that he might not have given to it, or selected it as the
beneficiary under his will.  Why, then, should we say that
after his death his clearly expressed charity shall not be
carried out because not limited to a certain locality, or to
be dispensed within geographical lines approved by us or
dictated by his heirs?  We are of the opinion that no legal

reason exists why we should so hold. The trustee has the power of selection, and by exercising this power she makes the beneficiaries certain, and carries out the true intention of the testator, and we hold that the object or persons selected by her need be confined to no particular locality, and that the bequest in this respect is valid. *Quinn v. Shields, supra*; *Phillips v. Harrow, supra*; *Claypool et al., v. Norcross et al.*, 42 N. J. Ch. 545 (9 Atl. Rep. 112); *Board of Com'rs v. Dinwiddie*, 139 Ind. Sup. 128 (37 N. E. Rep. 795); *Woodruff v. Marsh*, 63 Conn. 125 (26 Atl. Rep. 846, 38 Am. St. Rep. 346). In the *Quinn Case* the charity was institutional, but there can be no difference in principle. In the *Phillips Case* the bequest was for the building and maintenance of a foundling hospital, "with the special view and purpose of relieving unfortunate females, and for protecting and caring for their offspring," and it is said: "The provision for a foundling hospital is not so specific, in that the beneficiaries are not limited to residents of any designated locality; but that was not necessary. The persons who are intended to be benefited are described with sufficient certainty to enable the trustees to distribute the fund according to the real intent of the testator." *Lepage v. McNamara*, 5 Iowa, 124, was an action brought by the heirs of Lepage, deceased, for the recovery of real estate deeded to the defendant by Bishop Loras under the following devise; "I direct and authorize the Right Reverend Bishop Loras or his successors to dispose of my real estate, and apply so much thereof to the church or to the education and maintenance of poor children, as he in his wisdom may think proper and legal." The action was not one to enforce a charitable gift, and does not present facts so similar to those involved in this case as to make the language therein used, controlling here. In fact, in that case there was no charitable bequest, because the will left it optional with the bishop whether the fund should be given to the church or to the poor. In

*Moran v. Moran*, 104 Iowa, 216, the bequest was "to be divided among the Sisters of Charity," without limitation as to locality, and without giving the trustees the power to select the beneficiaries from among that class. It is there said, "We do not question the rule that it is competent for a testator to bestow a charity on a person or institution to be chosen by a trustee or executor, and that such bequests will be upheld;" and the decision rests upon the fact that no power of selection was given in the will.

The contention that the trust must fail because the court cannot appoint trustees to act in the place of the one named in the will is not sound, in our judgment. Such a

5. FAILURE of trustee to act: appointment by court.

contingency has not yet arisen, nor may it ever arise; and why should we anticipate imaginary difficulties for the purpose of defeating that sweet charity, which "in thought, speech, and deed challenges the admiration and affection of mankind." Christianity teaches it as its crowning grace and glory. Chief Justice Ryan in *Dodge v. Williams*, 46 Wis. 91 (50 N. W. Rep. 1104). The will provides that the entire fund shall be used as directed without limit as to time, and we may presume that it will be so expended during the life of the present trustee. *Quinn v. Shields, supra.* Moreover, the general rule is that a trust shall never fail for the want of a trustee. 1 Perry, section 38; *Seda v. Huble*, 75 Iowa, 429. And if it should ever become necessary for the court to appoint another trustee, we see no insurmountable obstacle in the way of its so doing. True, whatever remained of the fund would necessarily have to be distributed as the judgment of the appointed trustee might dictate; but the worthy poor "we have always with us," and they, as a class, were the objects of the testator's charity. The selection of the individuals from among their number must necessarily be left to the judgment of some one. To Miss Fouche is given the right to first execute the charitable purpose, and, although the testa-

tor does not expressly provide for the appointment of others by whom the objects shall be selected and the fund distributed when she shall decease, or for any other reason be incapable of acting, it cannot be that he intended his gift to fail.    He created it for a specific charitable purpose, and he might well suppose, if his attention were called to the matter, that proper means of executing his purpose could be provided through the medium of the courts, if in any matter of detail his provision therefor was insufficient.    "If the general object of the bequest is pointed out, or if the testator has fixed the means of doing so by the appointment of trustees with power of selection vested in them, then the gift must be treated as sufficiently definite for judicial cognizance, and will be carried into effect."    *White v. Ditson*, 140 Mass. 351 (4 N. E. Rep. 606, 54 Am. Rep. 473); *Bullard v. Chandler*, 149 Mass. 532 (21 N. E. Rep. 951, 5 L. R. A. 104); *Minot v. Baker*, 147 Mass. 348 (17 N. E. Rep. 839, 9 Am. St. Rep. 713); *Hoeffer v. Clegan*, 171 Ill. 462 (49 N. E. Rep. 527, 40 L. R. A. 730, 63 Am. St. Rep. 241); *Dodge v. Williams*, 46 Wis. 70 (1 N. W. Rep. 92, 50 N. W. Rep. 1103); *Harrington v. Pier*, 105 Wis. 485 (82 N. W. Rep. 345, 50 L. R. A. 307, 76 Am. St. Rep. 924); 1 Perry on Trusts, sections 248, 249; *Miller v. Chittenden*, 2 Iowa, 315; *Quinn v. Shields*, *supra*; *Phillips v. Harrow*, *supra*; *Seda v. Huble*, *supra*; *Johnson v. Mayne*, 4 Iowa, 180.

We have not overlooked the fact that many of the states have statutes designed to prevent the failure of charitable bequests, and that the courts of those states have carried out the spirit of such legislation whenever it has been found to be in harmony with the testator's intent.    But the courts are bound to sustain all lawful testamentary bequests, if possible, regardless of statutory enactment on the subject; and the rule we herein announce seems to us so manifestly just and right that we do not hesitate to adopt it for the purpose of giving full effect to the testator's plainly expressed purpose and intent.

The judgment of the district court is AFFIRMED.