E. W. BOND, Administrator, v. THE HOME FOR AGED WOMEN OF CEDAR RAPIDS, IOWA, *et al.*, Appellants.

**Construction:** WILL. Testator made a bequest "to the Orphan Asylum in Iowa, and to the Old Ladies' Home and to the Old Men's Home, if any such are organized in the state, but if not then to the same named institutions in Cleveland, Ohio." The bequest is payable *after debts and personal charges. Held*, the gift vested at death and could not go to a home not then organized.

"OLD LADIES' HOME" DEFINED. One Cook, by will, endowed a home in Iowa, which was incorporated as a home for "indigent and destitute females." The will expressed a wish that such females in Scott county be given a preference, and most of the inmates were from that county. The *by-laws* provide that no permanent inmate shall be admitted who is less than sixty years old, and for transient admission of females without reference to age, except that they must be over sixteen years old. *Held*, this institution may take under said bequest to "The Old Ladies' Home."

DEEMER and ROTHROCK, JJ., dissenting.

SAME: STIPULATION. On a trial between a home in Cleveland and one in Iowa, it was stipulated: "It is admitted that the Home for Aged Women of Cleveland, Ohio, is an institution devoted to furnishing a home to aged women; that said institution is and was the one intended by testator in his will and is entitled to its bequest provided there was no institution of public charity of the same kind in the state of Iowa entitled to take said bequest." *Held*, in view of the practical interpretation of the stipulation during trial, it did not become incumbent for the Iowa home to prove that it was of the same kind and character as the Ohio home, and that the only purpose of the stipulation was to dispense with the proof of the identity of the Cleveland home.

DEEMER and ROTHROCK, JJ., dissenting.

*Appeal from Monona District Court.*—HON. F. R. GAYNOR, Judge.

SATURDAY, APRIL 6, 1895.

Action in equity for the interpretation of the will of Baxter Whiting, deceased. There was a hearing on

the merits, and a decree in favor of the Home for Aged
Women of Cleveland, Ohio.  The defendants, the Home
for Aged Women of Cedar Rapids, Iowa, and the
Clarissa C. Cook's Home for the Friendless of Daven-
port, Iowa, appeal.  *Affirmed* as to the former, and
*reversed* as to the Home for the Friendless.

*A. R. West* and *Rickel & Crocker* for appellant
Home for Aged Women of Cedar Rapids, Iowa.

*Chrisman & Chrisman* for appellant Clarissa C.
Cook's Home for the Friendless of Davenport, Iowa.

*Oliver Bros. & Tillson* and *A. St. Newberry* for
appellee Home for Aged Women of Cleveland, Ohio.

Robinson, J.—The decedent was a resident of
Monona county, Iowa, but made the will in question
and died in Florida.  The will was executed on the
eleventh day of February, 1886, the testator died on
the fourth day of March, and the will was admitted to
probate in Monona county on the twenty-seventh day
of November of the same year.  The portion of the
will in controversy is contained in the fifth and seventh
paragraphs, which  are  as  follows:   "Fifth.  I
bequeath to the Orphan Asylum in Iowa, and to the
Old Ladies' Home and to the Old Men's Home, if any
such are organized in the state, but if not, then to the
same-named institutions in Cleveland, Ohio, from one
to seven thousand dollars each, equal amount to each,
according to the state of funds in the hands of the
trustees, giving them discretionary power as to the
amount."  "Seventh.  My desire is that the amount
devised to the Old Ladies' Home and Old Men's Home
shall be used for the benefit of worthy and proper per-
sons who may desire to enter, but are to poor to pay the

required entrance fee." The estate of the decedent is practically settled, and the funds are sufficient to pay all bequests in full. The question we are required to determine is, "Who is entitled to the bequest to the Old Ladies' Home?" The district court decreed that the Home for Aged Women of Cleveland, Ohio, is entitled to the bequest. It is agreed by the parties that the Cleveland home is the beneficiary of the will intended by the testator, in case a beneficiary within the terms and intent of the will should not be found in this state.

I. The Cedar Rapids home commenced operations May 1, 1887, and was incorporated in May, 1888. It claims to be an organization designed and conducted exclusively for the support of aged women, and that it is neither local nor sectarian in character. The chief objection made to it is that it was not in existence when the will took effect, and could not have been the beneficiary intended by the testator. As a general rule, for the purpose of ascertaining the intent of the testator, the will is regarded as taking effect at his death. 6 Lawson, Rights, Rem. & Prac., section 3155; *Otto v. Doty,* 61 Iowa, 26; *Phillips v. Harrow,* 93 Iowa, 92; *Canfield v. Bostwick,* 21 Conn. 553; Jarman Wills, 315; *Updike v. Tompkins,* 100 Ill. 410; *Sharpe v. Allen,* 5 Lea, 86. If that rule be applied in this case, it will exclude the Cedar Rapids home from the benefits of the will. It contends, however, that the bequest for the Old Ladies' Home was not intended to take effect until after the will should be probated, all bequests paid, and the estate settled. The will provides that "after the payment of my debts and personal charges I devise, bequeath, and dispose of my estate as follows." Then follow the provisions disposing of the estate. We do not think the language can be given the effect of suspending the

vesting of the interests conferred by the will until the payment of debts and the expenses of administration. Nothing is shown by the record which would warrant such a conclusion. The estate was large, and the debts amounted to but a small sum, and appear to have been paid by the special administrator before the Cedar Rapids home was organized. The bequest was to the beneficiary, and not to the trustees, although they were given discretionary powers as to the amount. That might have been affected by contingencies for which other portions of the will provided, but we are of the opinion that the interest created by the bequest vested when the will took effect, and was not postponed by the clause in regard to the payment of debts and personal charges. This conclusion is in harmony with well-established rules of law, and is sustained by the facts disclosed by the record. It is clear that the Cedar Rapids home could not have been the beneficiary intended, for the reason that it was not in existence, and, so far as the record shows, had not been planned, at the death of the testator. It follows from what we have said that the Cedar Rapids home is not entitled to anything under the will.

II.   The Davenport home was organized in 1880, and incorporated under the laws of this state, to carry into effect the provisions of the will of Clarissa C. Cook, deceased, in regard to a charitable and benevolent institution, which was to be known as the "Clarissa C. Cook's Home for the Friendless." The object of the corporation organized was to "provide a home for destitute and indigent females." The will also contained the following: "I cannot give full and detailed directions as to the management of the said home. I can only indicate in a general way the object of this legacy, and trust to the better judgment of the trustees herein

named, and to those who may succeed them, to carry into full effect, and in detail, the operation of said home. It is my wish that the destitute and indigent females of Scott county, in the state of Iowa, be first entitled to admission. Beyond that, if there is more room, the trustees may admit as many as they may deem advisable. The said trustees, after becoming incorporated, may make such rules, regulations, and by-laws as will carry into full effect the intent and object of this bequest. I request that the parties may become incorporated, that there may be perpetual succession." The home has been in continuous operation since the first of October, 1882, and is capable of taking care of twenty-seven permanent inmates. The number usually cared for is from twenty to twenty-five. It has been unable to receive all applicants, and preference has been given to residents of Scott county. Of the forty-nine permanent inmates received since the home was organized, but about seven have been from other counties. The by-laws provide that the home shall receive both permanent and transient inmates, without distinction as to nationality or color; that no person shall be admitted as a permanent inmate who is not sixty years of age, "and who has not resided five consecutive years in Scott county, Iowa, except under peculiar circumstances, when the case shall be left to the decision of the board of managers;" that an admission fee of one hundred dollars shall be paid into the treasury before the entrance of the applicant for permanent residence; that each permanent inmate shall enter into an agreement to comply with the rules and regulations of the home, to contribute to her own support, so far as she is able, and pledge her property for that purpose. The by-laws also provide for transient inmates over sixteen years of age, to be boarded and employed until

they can find suitable situations.   Under that by-law,
twelve or fifteen women have been received for short
periods of time, none of which have much exceeded a
week.   Most of them were young women, who were
required to render assistance in the home while there,
and what was furnished them was practically without
expense to the home.   The objections made to this
home as a beneficiary under the will of Whiting are
that it is not exclusively for the benefit of old women,
but is a home for destitute and indigent females, regard-
less of age; that it was organized solely for the purpose
of executing the trust created by the will of Mrs. Cook;
that the by-laws may be changed at the pleasure of the
board of managers, and young women admitted as per-
manent inmates; and that it is designed to be for the
special benefit of females of Scott county.   The will of
Mrs. Cook gave to the trustees of the contemplated
home a large discretion in carrying out the provisions
of the will.   In discharging their duties they con-
cluded to provide a home for the benefit of women who
are not less than sixty years of age.   In so doing they
did not violate any provision of the will, so long as the
funds at their disposal were not more than sufficient
to provide a home for women of that age who should
desire its benefits.   The chief purpose of the home, as
planned by the trustees and conducted, is to furnish a
home for old ladies.   We are not prepared to say, and
do not hold, that the will of Whiting contemplates
an institution which shall be for the exclusive benefit
of old ladies.   One which includes a home for old
ladies, and which is so organized that the bequest may
be used exclusively for their benefit, is within the
terms of the will.   It appears, however, that the
Davenport home and the funds devoted by Mrs. Cook
to its use are practically for the use of old ladies alone.
Young women are admitted for short periods of time,

on terms which make them servants or assistants, rather than beneficiaries, of the home. The fact that an entrance fee for the admission of old ladies is charged, and that they are required to contribute to their own support, so far as they are able to do so, does not prevent the home from being the beneficiary of the Whiting will, for that contemplates the use of the fund it gives in the payment of an entrance or admission fee. Nor will the fact that, in conferring the benefit of the home, residents of Scott county are to be preferred disqualify it to receive the bequest under consideration. That was for the benefit of the Old Ladies' Home in Iowa, if one was organized in the state, and not necessarily for one in Iowa which should be open to the old ladies in all the counties of the state, without preferences. The preference expressed in the will was for old ladies of this state before those of the state of Ohio. We conclude that the will of Mrs. Cook authorized the establishment of an old ladies' home in Iowa, and that the one in fact organized and maintained is an old ladies' home, within the meaning of the Whiting will.

It is said that, under a stipulation made by the parties for use on the trial, the Cleveland home must be given the bequest in question, unless there is a home of the same kind and character in this state. The stipulation, omitting immaterial facts, is as follows: "It is hereby agreed and admitted that the Home for Aged Women of Cleveland, Ohio, is a corporation duly organized and existing under the laws of the state of Ohio; that the same is an institution for public charity (located in Cleveland, Ohio), devoted to the care of aged women and to furnishing a home therefor; that said institution is and was the one intended and meant by the testator, Baxter Whiting, in his last will and testament, therein designated,

and referred to as the 'Old Ladies' Home of Cleveland, Ohio;' * * * that the aforesaid Home for Aged Women of Cleveland, Ohio, is the one intended by said testator, and the one entitled to * * * the bequest in said will to the 'Old Ladies' Home of Cleveland, Ohio,' provided there was no institution of public charity of the same kind in the state of Iowa entitled to take and receive said bequest, as provided in said will, but if there was such institution of the same character as described and intended by the testator in the fifth paragraph in said will, situated in the state of Iowa, and entitled to take and receive said legacy, then the aforesaid institution of Cleveland, Ohio, is not entitled to have and receive the same."

Whether it would have been within the power of the parties to control the disposition of the bequest by stipulations, contrary to the intent of the testator as shown by the will, we need not determine. It is sufficient to say that nothing of that kind was attempted. It is true the stipulation says the Cleveland home is the one entitled to the bequest, if there was no institution of public charity of the same kind in this state; but that provision is followed by the further and closing one, that the Cleveland home is not entitled to the bequest if there was such an institution, "of the same kind and character as described and intended by the testator," situated in this state, and entitled to take the bequest. The stipulation, as a whole, makes the intent of the testator controlling. It is only by taking a mere fragment of the stipulation, and ignoring its provisions as an entirety, that it can be said to require that the Iowa home be of the same kind as the Cleveland home in order to take under the Whiting will. A consideration of the stipulation as a whole, especially in view of the practical interpretation given it during the trial, shows that it was not designed to place upon.

the Cedar Rapids and Davenport homes the burden of showing that they were of the same kind and character as the Cleveland home, but that it was only intended to dispense with proof that the latter was the Cleveland beneficiary intended, in case no institution of the character contemplated by the will and competent to take under it was found in this state. Had it been true that the stipulation was intended to place the burden of proof upon the Iowa homes, it is fair to presume that they would have undertaken to show the character and scope of the work of the Cleveland home, but they made no attempt to do so. The stipulation and the answer of that home show about all we know of it. From these sources it appears that the Cleveland home, as now organized, had no existence until after the death of Whiting, and that the property it now uses as a home has been acquired since that event. It has been incorporated since this action was commenced, although it is probable that it succeeded an organization of some kind, which was designed to accomplish the same general purposes. It is not shown that the present organization is designed to furnish a home for old ladies only. Whether the care it devotes to aged women is given exclusively to inmates of the home, or whether it is furnished to women of that class elsewhere, does not appear. Whether any but aged women receive the benefits of the home and the conditions of admission can only be conjectured if the laws of Ohio are the same as those of this state, and we must presume that they are. The articles of incorporation of the Cleveland home may be amended, and the objects of the home changed. These facts do not affect the contingent right of the home to take under the will of Whiting, in view of the stipulation, but may be considered for the purpose of ascertaining the intention of the testator. As we have

said, the Iowa homes made no attempt to show the character and scope of the work of the Cleveland home, but confined themselves to the task of proving that they were, by reason of their organization and purposes, entitled to the Whiting bequest, and that was all they were required to do. It is possible that the terms of admission to the Davenport home may be changed; and that the home may be opened to all indigent and destitute women alike, regardless of age, and that it may cease to be an "Old Ladies' Home," within the meaning of the Whiting will, but we cannot presume that such changes will be made, nor anticipate questions which may arise if they are made. We conclude that the Clarissa C. Cook Home for the Friendless of Davenport, Iowa, is competent to receive the Whiting bequest, and is entitled to it. The decree of the district court, so far as it is questioned on the appeal of the Home for Aged Women of Cedar Rapids, Iowa, is *affirmed*. And in so far as questioned on the appeal of the Clarissa C. Cook Home for the Friendless of Davenport, Iowa, it is *reversed*.

Deemer, J. (dissenting).—The agreement entered into between the parties during the trial in express terms provides that the Home for Aged Women of Cleveland, Ohio, "is the one intended by testator, and the one entitled to have and to receive the legacy mentioned and provided for in the will, provided there was no institution of public charity of the same kind in the state of Iowa entitled to take the same." The only question to be determined, then, is, is the "Clarissa C. Cook Home for the Friendless of Davenport, Iowa," of the same kind and character as the "Home for Aged Women of Cleveland, Ohio?" The burden is upon the "Clarissa C. Cook

Home" to show that it is, and if it has failed in this it will not be entitled to take under the will.

The agreement recites that the Home for Aged Women of Cleveland, Ohio, is a corporation duly organized under the laws of the state of Ohio; that it is an institution for public charity, devoted to the care of aged women, and to furnishing a home therefor. Now, to determine the character of the Davenport institution, we must look to those instruments which give it vitality and indicate its character. These are, first and most important, the will of Clarissa C. Cook; and, second, the articles of incorporation. The eleventh paragraph of the will devises to trustees a certain amount of money, and directs them to incorporate under the name and style of "The Clarissa C. Cook Home for the Friendless;" the object and purpose of such corporation being "to provide a home for destitute and indigent females." The corporation had power under the will to organize for this purpose, and to adopt such by-laws and regulations as would carry into full effect the intent and object of the bequest. The will also provides that it was the testator's wish that destitute and indigent females of Scott county be first entitled to admission. Beyond that, if there is room, the trustees may admit as they deem advisable. The discretion lodged in the trustees was to carry into full effect and detail the operation of the home, under the terms of the will. The articles of incorporation adopted by the trustees provide for the organization of a home for destitute and indigent females, in strict accord with the terms of the will. It is clear to my mind that this is not a home for aged women, but that it is for destitute and indigent females of all ages. The home at Cleveland is an institution of public charity, organized for the sole purpose of caring for aged women, and furnishing them a home. It does

not receive any but women of an advanced age, who are destitute. The Davenport institution is for the care of destitute and indigent females of all ages, and preference is given to residents of Scott county. Indeed, none others are admitted, unless there is room. It is apparent that the testator did not have in mind any such institution as the one at Davenport. The majority say that the home of Davenport, as operated under its present by-laws, is in effect a home for aged women. Herein lies the error of the opinion, as I view it. The nature and character of a corporation are not to be determined from the methods it adopts for the transaction of its business, nor from the by-laws,—certainly not from the by-laws. These are temporary rules adopted for the internal government of the corporation, and, if not in full accord with the articles of incorporation, they are void. They are not grants of or limitations of power conferred upon the corporation by the state, and are never looked to, as I understand it, to determine the scope or character of the institution. Let it be conceded that they do indicate its character. In this case there are provisions in them for the admission of females over sixteen years of age, to be boarded and employed until they find suitable employment. True, such inmates are called "transient," but this is indefinite. When construed with the other provisions, it means that they are inmates so long as they are indigent and destitute; for when they find suitable employment they are neither, under the by-laws relied upon. Women of any age over sixteen are received and provided for by the institution so long as they are destitute and indigent. Article 4, section 2, of the by-laws, provides that a woman of any age may be admitted, at the discretion of the board of managers, as a permanent inmate. Something is said in the opinion about young women

not being a burden to the home. Some of the old women may not be, for they are required, not only to pay an admission fee, but to give the institution a mortgage upon their earthly possessions and expectations upon entering the home. The majority say we are not fully informed as to the character of the Cleveland home, and that we may presume that it has the same powers as the Davenport institution. I do not agree to this proposition. The burden is upon the Davenport home to show it is of the same kind and character as the one at Cleveland. I do not think there is any failure of proof, but, if there is, then the Home for the Friendless cannot recover. I do not think it makes any difference what the by-laws of either institution were. It is also said that either of these institutions may change their articles of incorporation or by-laws, and become alike in character and purpose, and that the testator must have had this in mind. I do not think the Davenport home can change its articles, unless it be to carry into effect the provisions of the will on which it was founded. Concede that the Ohio institution may, what effect does that have on the case? We are trying to determine whether, at the time of Baxter Whiting's death, the Davenport institution was of the same kind and character as the one at Cleveland. With what either may or may not do in the future we have no concern. If the Cleveland corporation so changes its character in the future as that it is no longer a home for aged women, the fund devised by the Whiting will can be protected; and I care not, so far as this case is concerned, what its right may be in this respect. But for the fact that the majority opinion seems to recognize the right to look to the by-laws and the temporary management of a corporation to ascertain its scope and

character I might remain silent.   I do not wish, however, to assent to such a doctrine, and therefore respectfully dissent.   I would affirm the decree for the further reason that I do not think the testator had in mind the indigent and destitute females of Scott county as the special object of his bounty.   The decree of the district court should be in all respects *affirmed*.

I am authorized to say that Justice Rothrock concurs in this dissent.