STATE ex rel. HAYES, State's Atty., v. BOARD OF EQUALIZATION FOR LAWRENCE COUNTY *et al.*

Under Const. art. 11, § 6, authorizing exemption from taxation of property "used exclusively" for charitable purposes, a building owned by

a charitable institution, but part of which is used for a store, cannot be exempt, though the rents are used for charitable purposes.

(Opinion filed Oct. 7, 1902.)

Appeal from circuit court, Lawrence county. Hon. Jo-SEPH B. MOORE, Judge.

Certiorari proceeding by the state of South Dakota, on the relation of Robert C. Hayes, state's attorney for Lawrence county, against the county board of equalization for said county, and the members thereof. Judgment for defendants. Plaintiff appeals. Reversed. The facts are stated in the opinion.

*Robert C. Hayes,* State's Atty., for appellant.

*Moody, Kellar & Moody,* for respondents.

HANEY, P. J.   The question presented by this appeal is whether certain real property in Lawrence county, owned jointly by Golden Star Lodge, No. 9, A. F. & A. M., and Lead City Lodge No. 17, I. O. O. F., is exempt from taxation. It appears that these lodges own "the west 30 feet of block 2, lot 12, according to the Hopkins map of the city of Lead," whereon is situated a two-story brick building, the basement and upper story of which are used by the lodges for the purpose of holding their meetings and transacting their business, and by other charitable, religious, and fraternal organizations to which the same from time to time are rented; that the lower story of the building is rented and occupied by a retail store, but the entire proceeds of such rentals are applied to religious and charitable purposes, and none other; that the lodges cannot, under and by virtue of the terms of their organizations, distribute any of the proceeds of such rentals to any of their

own members, pay any dividends, or use any of such rentals for any commercial business, speculative or mercantile pur-poses, or for any other than religious and charitable purposes, and in paying ordinary and usual operating expenses, which are of a trivial and insignificant character; and that the disposition of the rentals received by the lodges is not confined to their own members, but that the proceeds of such rentals are distributed to sundry public charities, and for the benefit of the needy, indigent, and suffering poor, whether members of the order or not.

Article 11 of the state constitution contains these provis-ions:

"Sec. 5. The property of the United States and of the state, county, and municipal corporations, both real and per-sonal, shall be exempt from taxation.

"Sec. 6. The legislature shall, by general law, exempt from taxation, property used exclusively for agricultural and horticultural societies, for school, religious, cemetery and charitable purposes, and personal property to any amount not exceeding in value two hundred dollars, for each individual li-able to taxation.

"Sec. 7. All laws exempting property from taxation, other than that enumerated in sections 5 and 6 of this article, shall be void."

The statute, so far as applicable to this case, reads as fol-lows: "All property described in this section to the extent herein limited shall be exempt from taxation, that is to say: * * * Third. All property belonging to any charitable, benev-olent or religious society, or used exclusively for charitable, benevolent or religious purposes." Laws 1897, c. 28, § 5. In

so far as the statute is broader than the constitution, it is conceded to be invalid. The inquiry, therefore, will be whether the property is exempt under the organic law. It is also conceded by counsel that the owners of the property are organized for charitable purposes, within the meaning of the constitutional provision quoted. This proposition will be accepted for the purposes of this appeal, without expressing any opinion concerning the rights of fraternal organizations, as such, to claim exemptions. Assuming, then, that these lodges existed for charitable purposes, and that their property is exempt while used exclusively for the purposes for which they are organized, we will proceed to consider whether the property involved in this action is being so used. Appellant contends that, whereas the lower story of the building is occupied by a stock of merchandise, the property to that extent is used for the purpose of retailing merchandise, and is not exempt. On the other hand, it is insisted by respondents that, whereas the rentals of the storeroom are used for charitable purposes, the entire property is so used, and consequently exempt. Therefore the controversy turns upon the meaning of the word "use," as employed in the statute. The verb "use" is thus defined by Webster: "To make use of; to employ; to put to a purpose; as to use a plow; to use a chair; to use a book; to use time; to use flour for food; to use water for irrigation." In the language of Judge BREWER: "All property receives protection from the state. Every man is secured in the enjoyments of his own, no matter to what use he devotes it. This security and protection carry with them the corresponding obligation to support. It is an obligation which rests equally upon all. It may require military service in time of war, or civil service in

time of peace.   It always requires pecuniary support.   This is taxation.   The obligation to pay taxes is coextensive with the protection received.   An exemption from taxation is a release from this obligation.   It is the receiving of protection without contributing to the support of the authority which protects. It is an exception to a rule, and is justified and upheld upon the theory of peculiar benefits received by the state from the property exempted.   Nevertheless it is an exception, and they who claim under an exception must show themselves within its terms."   Washburn College v. Shawnee Co. Com'rs, 8 Kan. 344,   To avail themselves of the exemption claimed in this action, the owners of the property must show themselves to be clearly within the exception as defined and limited by the constitution.   Do not the express terms of that instrument require that the property itself shall be exclusively used for the excepted purpose?   As the constitutional provision on this subject is substantially the same in Kansas as in this state, we quote at length from a decision by the supreme court of that state: "Under the laws of this state, all property not expressly exempted is subjected to taxation.   Gen. St. p. 1019, c. 107, § 1. And no property is exempted because it is used for educational purposes unless it is exclusively so used.   Const. art. 11, § 1. Property used partially for educational purposes and partially for some other purpose is not exempt.   Even property used mainly for educational purposes, but not exclusively, is not exempt.   In the present case we shall not discuss separately the taxability of each article or piece of property claimed to be exempt, but shall discuss more especially the taxability of the inclosed arable and cultivated land; for, if any portion of the plaintiff's property is exempt from taxation, it is certainly that

portion. This property was used for at least three purposes: (1) It was used for the purpose of teaching certain Indians agriculture; (2) it was used for the purpose of raising food for a large amount of live stock kept on the farm, and food for said Indians, their tutors, etc.: (3) it was used for the purpose of raising produce to sell. The proceeds of the sales, however, were used to feed and clothe the Indians, to feed and clothe 'the employes in their training,' and to feed and clothe 'the missionaries among them.' We suppose it will be conceded that, if the property were used exclusively for the purpose of teaching the Indians agriculture, it would be exempt. But even this may not be certain, for agriculture was hardly considered a branch of education when our constitution was framed. For the purposes of this case, it may also be conceded that if the property were used exclusively for teaching the Indians agriculture, and for raising food for them and the professors, and the necessary stock kept on the farm, it would still be exempt. But when it is used to raise food for stock not necessary to be kept on the farm, and to raise produce to sell, no further concessions in favor of its exemption can be made. Such use goes at least one step beyond where concessions can be made in favor of its exemption. It is solely the use of the property which determines whether the property is exempt or not. Washburn College v. Shawnee Co. Com'rs, 8 Kan. 344. It makes no difference who owns the property, nor who uses it. Property used exclusively for educational purposes is exempt, whoever may own it or whoever may use it. Property not used exclusively for educational purposes, if otherwise taxable, is not exempt, whoever may own it or whoever may use it. And this use must be direct and immediate, and not

indirect or remote.  Cincinnati College v. State, 19 Ohio, 110. If a farm be used for the purpose of raising produce to sell and get money to carry on a school, it will not be exempt. The use for educational purposes is in such a case too remote. The immediate or primary object for cultivating the farm in such a case is to obtain the produce, the secondary object is to obtain the money that the produce will bring, and the remote object is to aid and foster the school.  The farm itself, in such a case, is not used in teaching anything or in illustrating or explaining anything, as books, charts, apparatus, etc., are. It is not used as a necessary shelter and protection for the students, their books, apparatus, etc., as a schoolhouse always is.  And it is not used as a necessary site for a schoolhouse, as schoolhouse grounds always are.  In fact, it answers no direct or immediate educational purpose or necessity.  It is no part or portion of the school, and is not used as such.  It therefore does not come within the constitutional exemption.  But the farm of the plaintiffs is used directly as well as remotely for educational purposes.  It is used directly for the purpose of teaching and illustrating agriculture, and it is used remotely for the purpose of aiding and fostering their school.  The former use is covered by the constitutional provision, but the latter use is not.  The constitution does not exempt a farm used to raise produce to sell to other persons to obtain means whereby to purchase articles of food and clothing to feed and clothe the students, professors, and missionaries connected with the school.  And therefore, as the latter use, above mentioned, is not covered by the constitution, the plaintiff's farm cannot be held to be exempt, for all property, in order to be exempt, must be devoted exclusively to the use covered by the

constitution." St. Mary's College v. Crowl, 10 Kan. (2d Ed.) 333. In Nebraska, where the law seems to be the same as here, the supreme court answers the contention that the use of the rentals of 'real property determines its taxability in the following (to us) convincing and satisfactory manner: "It might be that these rents would be exempt, under the provisions of the constitution and the statute to which allusion has been made, for it might be contended with much plausibility that the money derived from rents is property to be used exclusively for religious purposes. After the rent has been collected, it is, as property, very distinct from the realty out of which it arose; and evidence of an intention to devote rents to a religious purpose has not even a tendency to show the nature of the use of the real property from which the rents have been derived. Let us suppose, merely by way of illustration, that one of the lessees of this real property should erect a building thereon for use as a saloon; would it be contended that the property was, after the saloon was in operation, used exclusively for religious purposes, merely because of appellant's intention to make such use of the rents issuing from the thus improved property? This question would meet with a prompt and unequivocal negative, and such a negative would be a complete answer to the contention made on behalf of the appellant. Authorities have been freely cited by both appellant and appellee, but, as the cases decided depend very much upon distinct statutory provisions, we have thought best to confine attention to our own constitution and statute on the subject under discussion." First Christian Church v. City of Beatrice (Neb.) 58 N. W. 166. To the same effect are the following decisions: Young Men's Christian Ass'n v. City of New York

(N. Y.) 21 N. E. 86; Cincinnati College v. State, 19 Ohio, 110; Massenbury v. Grand Lodge (Ga.) 7 S. E. 636.   In Missouri and Connecticut, it would seem, it is enough that the rents of property are used for the excepted purpose.   Society v. Hudson, 12 Mo. App. 342; Id., 85 Mo. 32; Town of New Haven v. Board of Trustees of Sheffield Scientific School (Conn.) 22 Atl. 156.   Without further reference to the numerous adjudications relating to the subject, we conclude that our constitution requires that the property itself, not its rents and profits, must be used for charitable purposes, in order to render it exempt from taxation.

It is held in some jurisdictions that where property is used for different purposes, or, as in this case, where a part of the building if used for other than charitable purposes, there may be a due apportionment of values in the assessment, so as to confine the exemption to so much of the value as the privileged part represents.   Massenbury v. Grand Lodge, supra.   We cannot subscribe to this doctrine.   It conflicts with the letter and spirit of our constitution.   Any quantity of real property so situated as to be properly assessed as one tract or parcel, under one description, should be treated as an entirety, all or no part of which is taxable.

It follows that defendants should not have stricken the property from the tax roll, that the learned circuit court erred in sustaining such action, and that the judgment must be reversed.