THE BOARD OF REVIEW OF COOK COUNTY, Appellee, *vs.*
THE CHICAGO POLICLINIC, Appellant.

*Opinion filed February 20, 1908—Rehearing denied April 9, 1908.*

TAXES—*property of Chicago Policlinic is exempt from taxation.*
Property of the Chicago Policlinic used for hospital purposes and
a training school for nurses is exempt from taxation as property
used for charitable purposes, and such of its property as is used
for a school of medicine and surgery is exempt as property of an
"institution of learning." (*Sisters of St. Francis* v. *Board of Re-
view,* 231 Ill. 317, and *People* v. *St. Francis Xavier Female Acad-
emy,* (*ante,* p. 26,) followed.)

AUDITOR's certificate of appeal to review a decision of
the board of review of Cook county.

SCOTT, BANCROFT & STEPHENS, for appellant.

HARRY A. LEWIS, County Attorney, and WILLIAM F.
STRUCKMANN, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a decision of the board of re-
view of Cook county assessing for taxation for the year
1907 certain real property in the city of Chicago used by
appellant for hospital purposes, a school of medicine and
surgery and a training school for nurses. Appellant, claim-
ing the property to be exempt from taxation, has appealed
from the decision of the board of review, and the case is
brought here on the certificate of the Auditor of Public Ac-
counts.

The Chicago Policlinic is a corporation organized un-
der the laws of the State of Illinois for the purpose of es-
tablishing and maintaining a hospital and dispensary, a
school of medicine and surgery and a training school for
nurses in the city of Chicago and of erecting or acquiring
the buildings necessary therefor, and is not for pecuniary

profit. It was first organized in 1886, but was re-organized under its present charter in 1901. It is managed by a board of trustees. No stock is issued and it pays no dividends. It maintains and operates a hospital and dispensary, a school of medicine and surgery and a training school for nurses at Nos. 174 and 176 East Chicago avenue, Chicago, occupying for that purpose lots 14 and 15, in block 18, of Newberry's addition to Chicago, which are actually and exclusively used by appellant for the purposes above indicated and no part is leased or otherwise used with a view to profit. In some years it is able to pay for its own operation and in other years it is operated at a loss, and the deficit is made up from subscriptions and donations from its members and others. During the past year its gross revenues from all sources were $37,591.19 and its gross expenses $38,004.10. If, during any year, its receipts are greater than its expenses, the balance is put into improvements. During the past year it received from donations the sum of $6000, of which $1000 was given by its trustees. No part of said amount was donated by doctors or trustees who had patients in the hospital. The hospital and dispensary are open to the general public and receive the sick and injured of all classes, colors or creeds. At the dispensary are treated all persons who present themselves, needing medical or surgical treatment but who are not sufficiently ill or injured to be placed in a hospital. No charge is made for services rendered in the dispensary nor by the attending physician. Patients are required to pay ten cents for each dressing needed, if able, but medicine and dressings are furnished free to all unable to pay. Many of the patients are emergency cases brought in by the Chicago police. During the past year 18,600 cases were treated without charge at the dispensary, of which fifty-five per cent did not pay for either dressing or medicine. In addition to this, 842 cases were treated in the hospital during the same period. Some of these latter come in through the dispensary and others are sent by doctors. All

persons presenting themselves are received into the hospital, regardless of whether or not they are able to pay the cost of their keeping or treatment, the only restriction being its capacity. When patients in the hospital are able to do so they are required to pay for their maintenance, ranging from $8 to $20 a week, the cost to the hospital being $14.50 a week for each patient. The charge for maintenance includes board and lodging and the services of a trained nurse and house doctor. Of the 842 cases cared for in the hospital, 66 were treated absolutely free, 650 others paid less than the cost of their maintenance and 126 paid more than they cost. Four of the trustees have sent patients to the hospital during the past year. No doctor has ever been refused permission to send his patients to the hospital, nor has any patient ever been refused admission because the doctor was objectionable to those in charge of appellant corporation. There is no restriction as to doctors who may send patients to or treat patients in the hospital. During the past year sixty-seven doctors not members of the corporation have had patients treated there. When a doctor sends a patient there he may give his services to such patient free or make a charge, but the question of a charge, and its amount, is entirely between the patient and his doctor. There is no rule of the institution compelling doctors connected with it to turn over fees received from patients treated therein. None of the trustees, officers or faculty of the school receive any remuneration, nor are they or any of the doctors employed in the hospital or dispensary paid by appellant for treatment rendered to patients in the hospital or dispensary. The hospital and dispensary of the Policlinic are operated in connection with the training school for nurses and the medical school. In the training school for nurses, medicine and anatomy are taught, as well as the care and nursing of the sick. It is open to all reputable white women, without regard to class or creed. No tuition fee is charged. For the services which the nurses of the training school render in

the hospital they receive only nominal compensation, three dollars a month for the first-year nurses and five dollars a week for the second and third-year nurses. The medical school is a post-graduate school, where the higher branches of medicine and surgery are taught, including anatomy, bacteriology, physical diagnosis, ophthalmology, otology, laryngology and many other subjects, and it is open to all members of the medical profession. A small tuition fee is charged, its amount being dependent on the courses taken but only sufficient to pay for the cost of maintenance. There were 357 students in attendance at the medical school during the past year and 31 in the nurses' training school. The plan of the appellant is to pay its expenses, if possible, and still give assistance to as many needy persons as it can without cost to them.

The only point urged by counsel for appellee is that the property of appellant is not actually and exclusively used as a public charity. This case on this question cannot be distinguished from *Sisters of St. Francis* v. *Board of Review,* 231 Ill. 317. That decision renders unnecessary any further discussion as to whether the property used for hospital and dispensary purposes and a training school for nurses is exempt, and as appellee makes no point that the property is used, in part, for a school of medicine and surgery, if this were not a public matter we would be justified in passing over, without discussion, this latter point. There is nothing in the record to show just what part of the building is used for that purpose. We think it is clear, however, that the nature of the branches taught would bring it within that class of institutions of learning of a higher grade than the public schools, not used with a view to profit, and that therefore such part of the building as is used for this purpose is exempt on this latter ground. *Montgomery* v. *Wyman,* 130 Ill. 17; *City of Chicago* v. *University of Chicago,* 228 id. 605; *People* v. *St. Francis Xavier Female Academy,* (*ante,* p. 26.)

While no point is made in the briefs, something is said in the agreed state of facts as to patients from the hospital and dispensary being used as subjects to be treated at the clinics in the medical school. .If, in order to be treated at the hospital or dispensary, these patients were compelled to permit themselves to be used as subjects for the clinics it could hardly be said that the institution was a public charity free to all. We assume, however, from what we find in the record, that the patients are not required, against their will, to be used as such subjects.

The decision of the board of review of Cook county will be set aside and annulled.