# LUTHERAN HOSPITAL ASSOCIATION OF SOUTH DAKOTA, v. BAKER, County Treasurer, Respondent.

## (167 N. W. 148.)

(File No. 4280. Opinion filed March 26, 1918.)

1. **Taxation—Incorporated Hospital Association, Whether Taxable— Church Benevolent Society—Public Charity—No Capital Stock or Profits—Revenue From Patients—Nurses' Training School, Effect—Constitution, Statute.**

Const., Art. 11, Sec. 6, provides that Legislature shall by general law exempt from taxation property used exclusively for charitable purposes. Pol. Code, Sec. 2056, provides that all property belonging to a charitable society, or used exclusively for charitable purposes shall be exempt from taxation. **Held,** that a hospital association chartered under Civ. Code, Art. 19, Ch. 3, relating to benevolent corporations, whose membership is composed of members of some Lutheran congregation, whose corporate purpose is to provide for, nurse, and give medical attention to sick persons; whose property, etc., is obtainable by gift, grant, purchase and testamentary will; whose members are not liable for corporate debts; which may not issue stock certificates, whose members receive no corporate dividends or profits; whose revenues were derived from membership fees, donations and gifts, it receiving no doctors' fees; the only persons receiving compensation therefrom being its superintendent and its employees; which charges nothing for services to indigent members; which maintains a nurses' training school, such apprentices receiving a small salary from the hospital; and whose pauper patients are charged to county at regular minimum rate—is a corporation or society organized and conducted, and its property is used, exclusively for charitable purposes; the criterion in this class of cases being that whatever is done or given gratuitously in relief of public burdens, or for advancement of public good, is a public charity; and an institution founded as a public charity does not lose its character as such under tax laws by receiving revenues from recipients of its county sufficient to keep it in operation; or, applying another test: If the object for which an institution is founded is the general public good, not private gain, and it is so conducted that the public receives all the benefits of it, it is purely a public charity.

2. **Benevolences—Charity Hospital Indefiniteness of Beneficiaries, As Characterization.**

Indefiniteness of beneficiaries, is one of the characteristics of a charitable use; a public charity may be open to all mankind, or its officers may be empowered to select beneficiaries from designated classes of humanity; so **held,** in construing articles of association of a church hospital association.

3. **Benevolences—Denominational Charity Hospital—Training Nurses, Effect re Charitable Purposes.**

The fact that an incorporated denominational charity hospital association has a department for training nurses, is not conflicting with its charitable purposes.

Appeal from Circuit Court, Codington County. Hon. CARL G. SHERWOOD, Judge.

Action by the Lutheran Hospital Association of South Dakota, an incorporated association, against L. Baker, as treasurer of the County of Codington, South Dakota, to recover certain taxes levied and assessed against plaintiff's property and paid under protest. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Reversed and remanded for further proceeding.

*Hanten, Hanten & Gault,* for Appellant.

*Sheafe & Haugen,* for Respondent.

(1)   To point one of the opinion, Appellant cited: Const. Art. 11, Sec. 6; City of Dayton v. Trustees of Speers' Hospital, (Ky.) 176 S. W., 361; Mich. Sanitarium Assn. v. City of Battle Creek, (Mich.) 101 N. W., 855; St. Joseph's Hospital Assn. v. Ashland County, (Wis.) 72 N. W. 43; In re taxes, 27 Minn. 460, 8 N. W. 595; Sisters of St. Francis v. Board of Review, (Ill.) 83 N. E. 272; Mason County v. Haywood Hospital, 179 S. W. 1050; Hot Springs School Dis. v. Sisters of Mercy, (Ark.) 106 S. W. 954; N. E. Sanitarium v. Stoneham, 91 N. E. 385; City of Philadelphia v. Pa. Hospital, 25 At. 1076 (Pa.).

Respondent cited: Union Pacific Railway Co. v. Artist, 60 Federal, 365, 6 Cyc. 898, Note 1; and submitted that: Plaintiff is used by doctors for operations, and they receive large operating fees as a result of their connection with the Plaintiff Association. Hence, Plaintiff is not an Association formed exclusively for charitable purposes, and is, therefore, subject to taxation; citing, 6 Cyc. 897-900; 37 Cyc. 926-8, and cases cited; Ann. Cas. 1917-B, 275; Note, Ann. Cas. 1917-B, page 278.

McCOY, J.   This action was brought under the provisions of chapter 289, Laws of 1915, to recover certain taxes assessed and levied against the property of plaintiff and paid under protest. Findings and judgment were in favor of defendant, and plaintiff appeals.

There is no conflict in the testimony. The sole and only question presented is whether or not the property of appellant, on which assessment and levy of taxes was made, was being used exclusively for charitable and benevolent purposes. Appellant is a corporation organized and existing under and by virtue of the provisions of article 19, c. 3, of the Civil Code, relating to benevolent corporations. The property of appellant on which

said taxes was levied consists of a hospital and equipment and the grounds upon which the same are located, situated in the city of Watertown, valued at about $32,500.

So far as is material to this controversy, the articles of incorporation of appellant are as follows: That the members thereof have agreed to associate themselves together for the purpose of becoming incorporated in perpetuity under the provisions of said article 19; that the general purpose of said incorporation shall be to receive, provide for, nurse, and give medical attention to sick persons, and such persons and patients as may apply for admission to the hospital under the rules and by-laws of said association; that its plan of operation shall be to organize and establish a suitable hospital for the purposes aforesaid, and to provide for such management as may be necessary to carry out its general purpose as a church charity, or benevolent society; that the terms of admission to membership into said corporation shall be that such members shall belong to some Lutheran congregation, and the payment of such initiation fee as shall be prescribed by the by-laws; that all other property and money of said corporation shall be obtained by gift, grant, purchase, and testamentary will; that the individual property of the members of said corporation shall not be liable for the debts of said corporation; that the said corporation may hold such real and personal property as shall be requisite to the immediate accommodation of its business, or such as may from time to time be acquired by purchase, donations, gifts, or wills, or such as shall have been purchased at sales upon judgments, decrees, or mortgages obtained or made for debts due said corporation; that the affairs and business transactions of said corporation shall be under the management and control of a board of directors to be elected by the members of said association. From the evidence submitted it appears that the articles of incorporation and charter of appellant permits no capital stock to be issued; that there are no shares of stock and none have been issued, and that no dividends or profits in any form have been received by any of the members of the association; that the corporation is composed of members who have paid $10 or more towards the establishment of said hospital; that the funds with which said hospital was established were received from such membership fees, donations, and gifts;

that no salaries are paid to any officers connected with said association; that the only persons who receive compensation are the superintendent, the nurses, and other persons employed directly in and about said hospital; that the hospital receives no part of the doctor's fees and has no control over the fees of doctors except that they are required to be reasonable; that the association requires that in the event a patient is unable to pay no charge of any kind is made, and that the attending physician donate his services; that those who are able to pay for services are expected and required to do so, but, where patients are unable to pay the regulation rate, they are only asked and required to pay what they reasonably can; that all persons or patients in need of hospital treatment are admitted without regard to race or creed, excepting those having contagious diseases, whether they have money or not; that the proportion of pay patients to charity patients has been approximately estimated as 95 per cent. pay to 5 per cent. charity; that the entire premises are used for hospital purposes and not otherwise; that the receipts from pay patients and current donations have at times' exceeded the expenses of running the hospital, and at the time of the trial of this case there was some surplus of receipts over running expenses, but which surplus funds are and always have been used solely to keep up and improve the said hospital property, and in paying interest on bonded indebtedness owing by said association; that a nurses' training school is maintained at said hospital wherein apprentice nurses are taught all the elements of nursing, including lectures by trained nurses and doctors, and that said apprentice nurses receive a small salary, and if found qualified are graduated by the hospital as graduate nurses; that all patients who are Codington county charges, being paupers, are charged to said county at the regulation minimum rate; that all persons, including members of appellant corporation, who have paid and contributed to said corporation are entitled upon request to a rebate of one-third of any hospital bill they may incur until the amount so contributed has been wholly returned to the donors in rebates.

[1]   Section 6, art. 11, State Const., provides that the Legislature shall by general law exempt from taxation property used exclusively for charitable purposes. Section 2056 of the Political Code provides that all property belonging to any charitable so-

ciety, or used exclusively for charitable purposes, shall be exempt from taxation. We are of the opinion that the appellant is a corporation or society organized and conducted exclusively for charitable purposes, and that its said property was and is being used exclusively for such purpose. The criterion in this class of cases seems to be that whatever is done or given gratuitously in the relief of public burdens or for the advancement of the public good is a public charity, and an institution founded as a purely public charity does not lose its character as such under the tax laws if it receives a revenue from the recipients of its bounty sufficient to keep it in operation; or, applying another test, if the object for which an institution is founded is the general public good, and not private gain, and it is so conducted that the public receives all the benefits of it, it is purely a public charity. The case of Dayton v. Trustees of Speers is clearly in point. 165 Ky. 56, 176 S. W. 361, L. R. A. 1917B, 779, Ann. Cas. 1917B, 276, and note. In that case, among other things, the court said:

"The county in which it is situated and the nearby cities have used it as an instrumentality to care for their indigent sick, and to procure surgical and medical treatment for them. It is true, the county and cities have compensated the institution for the care and treatment of their poor and friendless sick, but in a sum less than the actual cost to the instiution for caring for them. * * * While a charge is made against every patient, other than the ones who are consigned there by the county or cities, it does not appear that any one has ever been turned away, or excluded * * * because of poverty or inability to pay for the benefits. Private patients are received who pay the institution for their rooms, boarding, and nursing, and pay their physicians for their treatment, but the funds received from this source are all devoted to the general expenses of the hospital. A building and grounds and furniture are not adequate to maintain a hospital. The nurses must be paid, fuel and lights, water and food provided, and some one to superintend and direct the operations of the hospital. The fact that the institution receives a revenue from the recipients of its bounty, sufficient to keep it in operation, does not take from it its character as a purely public charity, where it was found and endowed as such, and when all of the receipts go to providing for the purposes for which it was

erected and maintained. The municipalities and the county itself in which the institution is located, and whose duty it is to care for the indigent sick of each of them, respectively, have, by its use, been saved the burden of erecting an institution of the kind of their own, or otherwise caring for such sick. * * * The Speers Hospital has been so conducted and was so endowed and maintained that no private gain has come to any one, and all of its benefits go to the public."

In the case of State v. Powers, 10 Mo. App. 263, 74 Mo. 476, in rendering the opinion in a similar case, the court, among other things, said:

"The fact that paying patients are taken, the profits derived from attendance upon these patients being exclusively devoted to the maintenance of the charity, seems rather to enhance the usefulness of the institution to the poor; for it is a matter of common observation amongst those who have gone about at all amongst the suffering classes, that the deserving poor can with difficulty be persuaded to enter an asylum of any kind confined to the reception of objects of charity; and that their honest pride is much less wounded by being placed in an institution in which paying patients are also received. The fact of receiving money from some of the patients does not, we think, at all impair the character of the charity, so long as the money thus received is devoted altogether to the charitable object which the institution is intended to further."

In the case of St. Joseph's Hospital Association v. Ashland County, 96 Wis. 636, 72 N. W. 43, the court among other things said:

"How it can be doubted that this institution is doing a benevolent work in the truest sense of the word, we are unable to see. It is really the work of the good Samaritan. It is true that those who are able to pay do pay a moderate weekly charge, but those who are unable to pay receive the same care for nothing. This does not render the work done any the less benevolent. Doubtless, if the hospital were absolutely free to all, it could not be operated. It is the very fact that pay is collected from those who can pay which enables the sisters to operate the hospital, and care for those who are too poor to pay. If this work be not benevolent work, especially in the great cities and in the newly

settled districts, then there will have to be a new meaning attached to the word 'benevolent.' * * * The fact that there were surplus receipts at times, which were loaned to build other hospitals of the same character, does not show that the property was used for pecuniary profit."

In the case of Sisters of St. Francis v. Board of Review, 231 Ill. 317, 83 N. E. 272, a similar case, the court said:

"The corporation has received, at various times, gifts and legacies from benevolent persons, and all moneys received by it, from every source, are used in maintaining this hospital, and when there is a surplus over the cost of maintenance it is used in extending or adding to the buildings, or in improving the facilities for caring for the sick. The corporation has never paid any dividends or profits to any person whatsoever, and its purpose is never to do so. The facts in reference to the training school conducted in this hospital are not clearly made to appear by the evidence, but, as we understand the record, persons not members of the corporation who desire to become trained nurses are permitted to enter the hospital, where they are boarded and taught to perform the duties of their chosen calling in exchange for such assistance as they can give in doing the work of the institution. * * * This hospital charity is extended to all the members of the community, and is not confined to any particular class of individuals. It is an institution of public charity, and where an institution devoted to benevolence of that character is, under the law, exempt from taxation, it does not lose its immunity by reason of the fact that those patients received by it who are able to pay are required to do so, or by reason of the fact it receives contributions from outside sources, so long as all the money received by it is devoted to the general purposes of the charity, and no portion of the money received by it is permitted to inure to the benefit of any private individual engaged in managing the charity. * * * It is then argued that this hospital should not be held to be an institution of public charity by reason of the great disparity between the number of charity patients and those who pay for the care and attention they receive at this institution. This objection seems to us without merit, so long as charity was dispensed to all those who needed it and who applied therefor, and so long as no private gain or profit came to any person connected with the

institution. * * * The institution could not extend its benefactions to those who did not need them, or to those who did not seek admission.")

In the case of Hot Springs School District v. Sisters of Mercy, 84 Ark. 497, 106 S. W. 954, under a statute exempting from taxation property exclusively used for public charity, a hospital, where those who are able to pay are required to do so, and those who are not able to pay are treated free, and where the institution also maintained a school for nurses, and which employed a number of girls who were taking instruction, who assisted in nursing the patients, and where all moneys received from any source was used to maintain the institution, and to pay borrowed money, and where such institution was open to any and all worthy sick persons, not afflicted with contagious or infectious diseases, or where no one was refused on account of religion or inability to pay, and where the whole of the money received was devoted to the charitable object which the institution was intended to further, it was held that the propery so used by the hospital was exempt from taxation. And a great many other decisions hold to the same effect, among which are the following: Michigan Sanitarium Association v. Battle Creek, 138 Mich. 676, 101 N. W. 855; German Hospital v. Board of Review, 233 Ill. 246, 84 N. E. 215; In re Texas, 27 Minn. 460, 8 N. W. 595; Mason County v. Hayswood Hospital, 167 Ky. 17, 179 S. W. 1050; Sanitarium v. Stoneham, 205 Mass. 335, 91 N. E. 385; Parks v. Northwestern University, 218 Ill. 381, 75 N. E. 991, 2 L. R. A. (N. S.) 556, 4 Ann. Cas. 103; Duncan v. Nebraska Sanitarium Association, 92 Neb. 162, 137 N. W. 1120, 41 L. R. A. (N. S.) 973, Ann. Cas. 1913E, 1127; Board of Review v. Chicago Policlinic, 233 Ill. 268, 84 N. E. 220.

[2, 3] Indefiniteness of beneficiaries is one of the characteristics of a charitable use. 11 C. J. 363. A public charity may be open to all mankind, or the officers thereof may be empowered to select beneficiaries from designated classes of humanity. In re Cleven, 161 Iowa, 289, 142 N. W. 986; Granit v. Saunders, 121 Iowa, 80, 95 N. W. 411, 100 Am. St. Rep. 310. Every characteristic in relation to the organization and conduct of appellant shows it to be an association organized and conducted for no other purpose than that of charity and benevolence. All the

money receipts of whatever nature go towards providing for the purposes for which appellant was brought into existence. The fact that it has a department for training nurses is not in conflict with its charitable purpose. It is just as necessary to have trained nurses as any other appliance. Common observation would say that one of the most efficient methods for procuring trained nurses would be to do your own training, so that no private profit resulted therefrom. So training, and having on hand at all times when needed, well-trained nurses, would improve the facilities of the institution for caring for the sick. Hence we are of the view, and so hold, that the appellant corporation is a purely benevolent or charitable institution, organized and conducted without any view of private gain or profit; that it was organized and is being conducted solely for the relief of public burdens and for the advancement of the public good; and that its property upon which the tax in question was assessed and levied was being used exclusively for a charitable purpose, and therefore was not subject to taxation. The existence in a community of such an institution which admits, cares for, and gives medical aid to the pauper as well as the prince, without private gain to itself, is a public charity in the fullest sense. Very fortunate, indeed, is the community which has situated in its midst such an institution, organized and conducted as is the one in question. It relieves the public from maintaining by taxation such an institution of its own. This is the basic reason for the exemption from taxation of the property of such institutions, when the same is used exclusively for the purposes of charity. The case of State v. Board of Equalization, 16 S. D. 219, 92 N. W. 16, is not applicable to the circumstances of this case, as in that case there was testimony to the effect that the property taxed was used for other than charitable purposes. There was no such testimony in this case.

The judgment and order appealed from are reversed, and the cause remanded, for further procedure in harmony with this decision.