#28549, #28595-aff in pt & rev in pt-SRJ
**2018 S.D. 72**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

AMERICAN LEGION HOME
ASSOCIATION POST 22,                    Petitioner and Appellee,

    v.

PENNINGTON COUNTY,
SOUTH DAKOTA,                           Respondent and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JEFF W. DAVIS
Judge

* * * *

RODNEY W. SCHLAUGER
ALLEN G. NELSON
Bangs, McCullen, Butler,
   Foye and Simmons, LLP          Attorneys for petitioner
Rapid City, South Dakota           and appellee.


MICHAELE SANDERS HOFMANN
Civil Deputy State's Attorney
Office of the Pennington County
   State's Attorney               Attorneys for respondent
Rapid City, South Dakota           and appellant.

* * * *

CONSIDERED ON BRIEFS ON
AUGUST 27, 2018
OPINION FILED **10/10/18**

JENSEN, Justice

[¶1.] The Pennington County Board of Equalization established an exemption of 32% for the 2017 tax year on real property owned by American Legion Home Association Post 22 (American Legion). American Legion filed an administrative appeal claiming it used the property exclusively for benevolent purposes; therefore, the real property should qualify for a 100% exemption under SDCL 10-4-9.2. The hearing examiner agreed and issued a decision directing that the exemption be increased to 100%. The circuit court affirmed. The County appeals, challenging the circuit court's decision and its separate order awarding attorney fees to American Legion. We affirm in part, reverse in part, and remand.

## Background

[¶2.] American Legion is a patriotic society with a mission to serve veterans and the community. It is organized and exists under the laws of South Dakota. American Legion owns real property in Rapid City, South Dakota, on which it operates a bar and restaurant open to member veterans and the public. The property also contains a meeting hall, which American Legion uses for membership and auxiliary meetings and rents for activities. It is undisputed that American Legion is a benevolent organization as defined by SDCL 10-4-9.2. As such, the County had, for many years, assessed American Legion's property to reflect a tax exemption for its use of the property exclusively for benevolent or charitable purposes.

[¶3.] For the 2017 tax year, the Pennington County Director of Equalization reevaluated American Legion's exemption percentage. Before reassessing the

property, the director visited American Legion and interviewed the person charged with managing American Legion's office and its bar and restaurant. The manager provided information related to American Legion's various uses of the property.

[¶4.]     Based on the information provided by the manager, the director determined the bar and restaurant comprise 43% of American Legion's property, and American Legion uses the other 57% for membership meetings and activities. The director concluded that American Legion's use of the property to operate a bar and restaurant was not benevolent, but that its use of the remaining 57% of the property was benevolent. After calculating the number of hours the bar and restaurant were open on average in a year, the director multiplied that number by 43% to arrive at a total number of days per year of non-benevolent use. Using that number, the director recommended American Legion be given a 12% tax exemption for the 2017 assessment.

[¶5.]     The Pennington County Board of Equalization reviewed the director's recommendation. The Board issued a written report, increasing the exemption to 32%. The Board accepted that American Legion used the meeting hall for benevolent purposes. It further agreed that use of the property to operate the bar and restaurant was not benevolent. The Board likened American Legion to two other benevolent organizations operating bars and restaurants in Rapid City: The Retired Enlisted Association (TREA) and Veterans of Foreign Wars (VFW). TREA had received a 20% exemption and VFW 32%. The Board then contrasted American Legion with Disabled Veterans, Inc., which does not operate a bar and restaurant and which received a 100% exemption.

[¶6.] American Legion appealed the Board's decision to the South Dakota Office of Hearing Examiners. At the hearing, multiple witnesses testified, including the director of equalization and the first vice commander of American Legion. The County argued it had properly classified and assessed American Legion's property because American Legion did not directly use the bar and restaurant for benevolent purposes. In the County's view, American Legion operated the bar and restaurant to serve food and beverages and to generate income, which purposes it claimed only indirectly benefited veterans.

[¶7.] In response, American Legion asserted it operated the bar and restaurant to fulfill its mission to help veterans and the community. It claimed the bar and restaurant provides a place for veterans to gather and seek help from American Legion as well as a place to eat and drink. It also asserted that the income-producing character of the use should not be dispositive; rather, the use of that income should be considered.

[¶8.] The hearing examiner issued a written decision concluding the County improperly assessed and classified American Legion's property. In the hearing examiner's view, American Legion existed solely for benevolent purposes and used its property exclusively for benevolent purposes. The hearing examiner entered an order modifying the County's assessment to reflect a 100% exemption.

[¶9.] The County appealed the hearing examiner's decision to the circuit court. The County argued that the hearing examiner erroneously interpreted SDCL 10-4-9.2 to permit exemption based on the benevolent nature of American Legion as an organization rather than the direct use of the property. American Legion

countered that the hearing examiner correctly interpreted and applied SDCL 10-4-9.2 to determine that it was entitled to a 100% exemption. In its brief, American Legion also indicated that after the court's decision, it would "file a motion for fees and costs along with a supporting affidavit," citing SDCL 10-11-45.1, which provides for an award of attorney fees and costs if the County does not prevail in the appeal.

[¶10.]     The circuit court issued a memorandum decision affirming the decision of the hearing examiner. The court concluded that American Legion's "structure itself" and the proceeds "derived from the operations conducted by Post 22 within the structure are used in total for the benefit [of] those it was chartered to serve." The court adopted the hearing examiner's findings and conclusions "in their entirety[.]" The court directed American Legion to prepare an appropriate order and wrote, "Pursuant to statute, you may submit attorney's fees and costs."

[¶11.]     Counsel for American Legion submitted proposed findings of fact, conclusions of law, and a judgment, which the circuit court entered. American Legion also submitted an affidavit of attorney fees in the amount of $11,177.18 but did not file a motion requesting attorney fees. The affidavit included information related to the attorney's practice history and recognitions received, his hourly rate, and the total hours he and others in the office spent on the case. But American Legion did not provide an itemization of its attorney fees. The judgment ordered that American Legion recover attorney fees from the County pursuant to SDCL 10-11-45.1 but left the amount of fees to be recovered blank. On the same day, the

court wrote "Approved" on American Legion's affidavit but made no findings on the reasonableness of the fees.

[¶12.]     Thereafter, American Legion filed an application for taxation of attorney fees and costs with the clerk of court in the amount of $11,177.18.  In the application, American Legion cited SDCL 10-11-45.1 and SDCL 15-6-54(d) and indicated the circuit court's memorandum decision had approved submission of attorney fees and costs.  American Legion requested that the clerk insert the amount of attorney fees into the judgment.

[¶13.]     The County objected, asserting that American Legion's request should be denied because it failed to file a motion for an award of attorney fees, and the clerk was not authorized to tax attorney fees.  The court held a hearing on the issue. The County argued that American Legion could not as a matter of law recover attorney fees because it did not follow the procedural requirements of SDCL 15-6-54(d).  The County also argued that American Legion failed to provide sufficient information for the court to consider the reasonableness of the fee request.

[¶14.]     The court awarded American Legion's requested fees.  The court also awarded, over the County's objection, American Legion's attorney fees incurred to defend the County's objection.  The court entered an amended judgment and order awarding American Legion $14,704.99 in attorney fees and tax pursuant to SDCL 10-11-45.1.

[¶15.]     The County filed two notices of appeal, one from the circuit court's order affirming the hearing examiner's decision and one from the circuit court's

order awarding attorney fees. We consolidated the appeals and restate the County's

issues as follows:

1. Whether the circuit court erred in affirming the hearing examiner's decision that the property was entitled to a 100% exemption from taxation under SDCL 10-4-9.2.

2. Whether the circuit court erred in awarding American Legion attorney fees.

## Standard of Review

[¶16.]　　　Our review of the circuit court's decision is controlled by SDCL 1-26-

37. *Dakota Trailer Mfg., Inc. v. United Fire & Cas. Co.*, 2015 S.D. 55, ¶ 11,

866 N.W.2d 545, 548. We review the agency's decision in the same manner

reviewed by the circuit court. *Id.* In that regard, we review the agency's findings of

fact for clear error and give no deference to the agency's conclusions of law. *Id.*

Questions of statutory interpretation are reviewed de novo. *Winslow v. Fall River*

*Cty.*, 2018 S.D. 25, ¶ 12, 909 N.W.2d 713, 717.

## Analysis

**1. Whether the circuit court erred in affirming the hearing examiner's decision that the property was entitled to a 100% exemption from taxation under SDCL 10-4-9.2.**

[¶17.]　　　The County argues that the hearing examiner and the circuit court

failed to give effect to the clear, certain, and unambiguous terms of SDCL 10-4-9.2

and apply case law interpreting the statute. It further argues the exemption was

granted based on the benevolent nature of American Legion rather than on

American Legion's direct use of the property. It contends SDCL 10-4-9.2 "requires

the property (not its rents and profits) to be used exclusively and directly in

carrying out the primary objective of the benevolent organization." In the County's view, "[i]ncome is, as property, very distinct from the realty out of which it arose." Relying on *Hayes v. Board of Equalization for Lawrence County*, 16 S.D. 219, 92 N.W. 16, 18 (1902), the County asserts "our constitution requires that the property itself, not its rents or profits, must be used for charitable purposes, in order to render it exempt from taxation."

[¶18.] In response, American Legion concedes its operation of a bar and restaurant generates income, but it argues the record supports the hearing examiner's determination that American Legion uses its property exclusively for benevolent or charitable purposes. It relies on *Lutheran Hospital Association of Sioux Falls v. Baker*, 40 S.D. 226, 167 N.W. 148, 151 (1918), for the proposition that income generation must be considered in relation to the benevolent or charitable objective of the organization. It then highlights that it operates the bar and restaurant exclusively to carry out its primary purpose of serving veterans and funding benevolent programs.

[¶19.] We have said that whether property is used exclusively for benevolent, charitable, or religious purposes is a question of fact to be determined by the finder of fact. *Loyal Order of Moose Lodge No. 1137 v. Pennington Cty.*, 1997 S.D. 80, ¶ 7, 566 N.W.2d 132, 134. But, here, the County's issue concerns whether South Dakota law required the hearing examiner and the circuit court to consider only American Legion's direct use of the property as a bar and restaurant apart from the purpose of that use in determining entitlement to an exemption under SDCL 10-4-9.2. When presented with mixed questions of law and fact, we "apply the clearly

erroneous standard if the 'analysis is essentially factual, and thus is better decided by the agency or lower court[,]' and the de novo standard when the 'resolution requires consideration of underlying principles behind a rule of law[.]'" *In re Dorsey & Whitney Tr. Co., LLC*, 2001 S.D. 35, ¶ 5, 623 N.W.2d 468, 471. Because the resolution of this issue involves primarily legal rather than factual determinations, we review the hearing examiner's decision de novo.

[¶20.]  The statute at issue—SDCL 10-4-9.2—provides: "Property owned by a benevolent organization and used exclusively for benevolent purposes is exempt from taxation." "However, if any such property consists of improved or unimproved property located within a municipality not occupied or directly used in carrying out the primary objective of the benevolent organization owning the same, such property shall be taxed the same as other property of the same class is taxed." *Id.* The statute defines benevolent purpose as "an activity that serves the poor, distressed or underprivileged, promotes the physical or mental welfare of youths or disadvantaged individuals, or relieves a government burden." *Id.*

[¶21.]  In determining American Legion's entitlement to a tax exemption, the hearing examiner quoted SDCL 10-4-9.2 and related case law. The hearing examiner then assessed the evidence to determine whether American Legion's use of its property satisfied SDCL 10-4-9.2. The hearing examiner identified that American Legion's purpose "is to provide a gathering place for veterans and to raise funds for veterans." The hearing examiner found that American Legion "provides assistance to veterans who are having setbacks in their lives[,]" which assistance included paying electric bills or for gas and providing free meals. Further, the

hearing examiner found that "[a]ll of the money raised by [American Legion] is given to veterans, donated to charitable organizations, or used for Rapid City youth programs." Based on these findings, the hearing examiner concluded that American Legion's property "is used and operated exclusively for benevolent purposes." The hearing examiner further held that "[t]he subject property is completely used for benevolent purposes[.]" The circuit court adopted the hearing examiner's findings.

[¶22.] The County does not specifically challenge these findings. Rather, it asserts the hearing examiner and the circuit court "erroneously reasoned" that American Legion's use of its property to operate a bar and restaurant satisfies SDCL 10-4-9.2. In considering this claim, we examine this Court's past cases. We begin with *Hayes*, which was decided in 1902. At the time, SDCL 10-4-9.2 was not in effect, but the *Hayes* Court was asked to determine a similar question, namely whether property belonging to two charitable societies was "used exclusively for charitable, benevolent or religious purposes." 92 N.W. at 16-17. The issue arose in *Hayes* because the charitable organizations did not use the lower level of their property—they rented it to a third party. The organizations claimed entitlement to an exemption because they distributed the rents and profits from the third party for charitable and religious purposes.

[¶23.] On appeal, the Court focused on the word "use" and concluded that "[i]t is solely the use of the property which determines whether the property is exempt or not." *Id.* at 17. The Court further held that the organization's charitable "use must be direct and immediate, and not indirect or remote." *Id.* Because the property was leased to a non-benevolent third party to operate a retail store and not

used by the charitable organizations, the Court concluded that the property was not exempt from taxation.

[¶24.]    In 1918, the Court reached a different result, although Lutheran Hospital used the property in part to generate income.  *Lutheran Hosp.*, 167 N.W. at 151.  The Court distinguished *Hayes*, noting that in *Hayes* there existed testimony that the organizations did not use the property while in *Lutheran Hospital*, the organization directly used its property.  Although the hospital generated income through its use of the property, the Court found compelling that all "money receipts of whatever nature go towards providing for the [charitable] purposes for which appellant was brought into existence." *Id.*  Further, the Court observed that the hospital was "organized and conducted without any view of private gain or profit" and "was organized and is being conducted solely for the relief of public burdens and for the advancement of the public good[.]" *Id.*

[¶25.]    A few years later, the Court again looked at the organization's use of the property in relation to the organization's benevolent, charitable, or religious purposes.  *Eveland v Erickson,* 44 S.D. 63, 182 N.W. 315 (1921).  The Court expressly disagreed with a view that considered "the mere use as distinguished and disconnected from the purpose of the use of property." *Id.* at 316.  The Court explained: "Each particular item of property has a use peculiar to itself, and yet the primary purpose for which all was provided and for which all is used" depends on "what is first, or fundamentally, in the intention of the owners of such property when putting same to use." *Id* at 317.

[¶26.]        The Court relied on *Eveland* in *In re Scottish Rite Temple Association*, and recognized that "it is not the mere use of the property that controls, but the 'purpose of the use.'" 62 S.D. 204, 252 N.W. 626, 627 (1934).  In *Scottish Rite*, the dwelling owned by a benevolent organization was used as a residence for the secretary and his family.  The Court held that because the purpose of the use as a residence was to promote the primary benevolent and charitable objectives of the organization, the property was exempt from taxation.

[¶27.]        Yet again this Court identified that in South Dakota "the test for determining whether property is 'used exclusively for charitable, benevolent, or religious purposes' is not the mere use of the property"; it is "the 'purpose of the use' which controls." *S.D. State Med. Ass'n v. Jones*, 82 S.D. 374, 380, 146 N.W.2d 725, 728 (1966).  The Medical Association argued that its activities resulted in "more or less direct benefits to the public[,]" and thus its use of its property was entitled to exemption from taxation. *Id.* at 378, 146 N.W.2d at 727.  The Court disagreed, concluding that the Medical Association's activities and expenditures did "not sustain its claim that the property is used exclusively—that is, primarily—for a benevolent or other purpose warranting exemption" because "there are elements of personal advantages and profit to members of the association that differ from those inuring to the public." *Id.* at 382, 146 N.W.2d at 729.

[¶28.]        Then in *South Dakota Education Association v. Dromey*, the Court observed that "the words 'used exclusively'" suggested "that any use whatever for purposes other than benevolent would require denial of exempt status." 85 S.D. 630, 633, 188 N.W.2d 833, 834 (1971).  But because the "purpose of the use" controls

and not just "use," the Court examined purpose connected to use. In doing so, the Court affirmed the circuit court's finding that the Association was not entitled to an exemption because the primary purpose of the Association's use of the property was to advance its members.

[¶29.] In a more recent case, the Court examined whether an organization's operation of a bar and restaurant was a use exclusively for benevolent purposes. *Moose Lodge*, 1997 S.D. 80, ¶ 7, 566 N.W.2d at 137. The Court recognized that "[a] determination of whether property is used exclusively for a benevolent purpose requires an evaluation of the 'purpose of the use' of the property." *Id.* The Court further recognized that "[p]roperty or improvements not occupied or directly used for accomplishing the benevolent objective of an organization are taxed the same as other property of the same class." *Id.* (citing SDCL 10-4-9.2). The Court affirmed the hearing examiner's findings that Moose Lodge's use of the bar and restaurant was not exclusively for benevolent purposes or a use to accomplish its benevolent objectives. *Id.* ¶ 9. Instead, the evidence established Moose Lodge used its facility primarily "to facilitate social activities exclusive to its members" and that 90% of the income received by Moose Lodge was used to operate the bar and restaurant "for the convenience of current members and the recruitment of new members." *Id.* ¶ 8. The Court upheld the determination that Moose Lodge was not entitled to a 100% exemption, stating "property of a benevolent organization is not used exclusively for the purposes for which it was organized if its activities and income inure primarily to the benefit of its members, even though there are incidental benefits to the public." *Id.* ¶ 7 (quoting *Med. Assoc.*, 82 S.D. at 381, 146 N.W.2d at 729).

[¶30.] Since *Lutheran Hospital* was decided in 1918, this Court has consistently applied "the purpose of the use" in considering whether property is used exclusively for benevolent purposes and whether it is occupied or directly used to accomplish those benevolent objectives. *See Moose Lodge*, 1997 S.D. 80, ¶ 7, 566 N.W.2d at 134. Therefore, contrary to the County's view, a benevolent organization's use of property to generate income will not alone cause the organization to lose the exemption under SDCL 10-4-9.2. *See, e.g., Lutheran Hosp. Ass'n*, 40 S.D. 226, 167 N.W. 148.

[¶31.] This is not to say that *Hayes* should be disregarded. Rather, we limit the reasoning in *Hayes* to situations where a charitable or benevolent organization leases some or all the property to a non-benevolent third party using the property for a business or profit-making venture. Indeed, the inquiry under SDCL 10-4-9.2 is fact intensive with no clear line demarcating what constitutes exclusive use for benevolent purposes. Each case must be decided on an examination of that specific organization's benevolent purpose in relation to its use of the real property.

[¶32.] Here, American Legion presented evidence, unlike the property owners in *Hayes* and *Moose Lodge,* that it directly uses its property (the bar and restaurant) to advance its mission to serve veterans and the community. Further, there is no evidence that American Legion operates the bar and restaurant to provide special benefits to, or primarily to advance, its membership. The bar and restaurant is open to member veterans, non-member veterans, and the public.

[¶33.] Relying on this evidence, the hearing examiner did not err when in finding found that American Legion's use of its property is exclusively for

benevolent purposes and that its operation of the bar and restaurant serves its benevolent and charitable purposes and objectives, similar to the evidentiary burden met in *Lutheran Hospital* and *Eveland*. From our review, the hearing examiner therefore did not err when in determining that American Legion is entitled to a 100% exemption under SDCL 10-4-9.2. We affirm the circuit court's order upholding the hearing examiner's decision. As such, we need not address the County's issue concerning the determination of any pro rata exemption.

### 2. Whether the circuit court erred in awarding American Legion attorney fees.

[¶34.]     According to the County, American Legion's failure to follow the procedure set forth in SDCL 15-6-54(d)(2), namely filing a motion within fourteen days following the entry of the judgment, is fatal to an award of attorney fees under SDCL 10-11-45.1. The County also contends that the circuit court lacked sufficient information to evaluate the reasonableness of American Legion's request. It highlights that American Legion failed to submit an itemized statement of fees to support its requested award.

[¶35.]     American Legion responds that it complied with SDCL 15-6-54(d)(2) because its application to tax attorney fees as costs and disbursements was essentially a motion. American Legion also argues that the affidavit of attorney fees provided adequate information for the circuit court to assess the reasonableness of the claimed fees.

[¶36.]     During the hearing on the County's objection, the circuit court indicated that it believed the rules of civil procedure, namely SDCL 15-6-54(d), did not apply to an award of fees under SDCL 10-11-45.1. This is incorrect. The rules

of civil procedure govern "the procedure in the circuit courts of the State of South

Dakota in all suits of a civil nature, with the exceptions as stated in § 15-6-81."

SDCL 15-6-1.[1]  Further, by its plain language, SDCL 10-11-45.1 does not supplant

SDCL 15-6-54(d).  SDCL 10-11-45.1 provides that "[t]he circuit court may award

disbursements, including reasonable attorneys' fees, in an action brought to circuit

court pursuant to this chapter by any appellant relative to the assessment of

property, if the appellant does not prevail in its appeal of the property assessment."

And under SDCL 15-6-54(d)(2)(A), "[c]laims for attorneys' fees and related

nontaxable expenses shall be made by motion unless the substantive law governing

the action provides for the recovery of such fees as an element of damages to be

proved at trial."

[¶37.]      Therefore, American Legion was required to file a motion and

otherwise comply with SDCL 15-6-54(d)(2).  American Legion's application to the

clerk to insert $11,177.18 in attorney fees into the judgment was not a motion to the

court as required by SDCL 15-6-54(d)(2).  However, in this case, American Legion's

failure to file a motion is not fatal to an award of attorney fees.  At the end of the

hearing on the tax appeal, American Legion indicated it would be requesting

attorney fees.  The court indicated it would award fees.  American Legion then

submitted its affidavit of attorney fees and the court wrote, "Approved" on the

---

1.      As indicated in SDCL 15-6-81(a), SDCL chapter 15-6 "does not govern
        pleadings, practice, and procedure in the statutory or other proceedings
        included but not limited to those listed in Appendix A to this chapter in so far
        as they are inconsistent or in conflict with this chapter."  Appendix A does *not*
        include SDCL chapter 10-11.  Consequently, the provisions of SDCL chapter
        15-6 apply.

affidavit. The affidavit was submitted prior to the judgment, and the application was submitted less than fourteen days after the entry of judgment. The application and affidavit provided the County with notice of the substantive law governing the request for attorney fees and the amount of fees requested by American Legion for the tax appeal, as required by SDCL 15-6-54(d)(2). Moreover, the County objected, requested a hearing before the circuit court on the application for taxation of attorney fees and costs, and filed a written notice of a hearing on American Legion's request for attorney fees.[2] Both parties appeared at the attorney fee hearing held approximately three weeks later.

[¶38.]     We have conditioned an award of attorney fees upon compliance with "procedural due process and fundamental fairness." *Kappenman v. Kappenman*, 522 N.W.2d 199, 203 (S.D. 1994) (quoting *Brennan v. Brennan,* 88 S.D. 541, 543, 224 N.W.2d 192, 193 (1974)). The County had adequate notice and opportunity to contest attorney fees sought. Therefore, American Legion's failure to file an actual motion, under these circumstances, does not warrant precluding an award of attorney fees by the circuit court. *See* SDCL 15-6-61.

[¶39.]     However, American Legion's failure to provide an itemized statement of attorney fees for the fees related to the tax appeal and related to defending the County's objection is more problematic. This Court has previously "stressed the importance of itemized attorney fee requests" to allow the circuit court to determine

---

2.    SDCL 15-6-7(b)(1) generally requires a motion to be made in writing and state "with particularity the grounds therefor." However, the writing requirement is fulfilled under the Rule if the motion is set out in a written notice of hearing on the motion.

a reasonable fee. *Brooks v. Milbank Ins. Co.*, 2000 S.D. 16, ¶ 21, 605 N.W.2d 173, 179. Indeed, "[w]ithout any itemization or time frame" to support the requested award of attorney fees, the circuit court lacks "sufficient information upon which to conclude that an award of [attorney fees] was reasonable." *Dooley v. Dooley*, 1999 S.D. 136, ¶ 27, 601 N.W.2d 277, 282.

[¶40.] For the tax appeal, American Legion's affidavit set forth that the bulk of the fee request consisted of 39.5 hours billed by the lead attorney at a rate of $250 per hour. But the affidavit did not provide an itemization or breakdown of the timeframe that these hours were billed or for the services that were actually rendered. For the fees related to defending the County's objection, American Legion's affidavit was not submitted until after the hearing was concluded and failed to provide a detailed itemization of attorney fees.[3]

[¶41.] A party requesting attorney fees has the burden of proving the basis and reasonableness of the fees by a preponderance of the evidence. *Stern Oil Co., Inc. v. Brown*, 2018 S.D. 15, ¶ 44, 908 N.W.2d 144, 157. Because the circuit court

---

3. At the conclusion of the hearing on attorney fees, American Legion made a request for additional attorney fees as follows:

> **Counsel for American Legion**: One other thing, can I include the attorney's fees incurred for the preparation for today's hearing?
>
> **Court**: Sure.
>
> **Counsel for American Legion**: Okay.
>
> **Counsel for the County**: Your Honor, I would on the record object. This hearing was necessitated by [American Legion's] failure to follow, file a formal motion as required under 15-6-54.

was without sufficient information to determine a reasonable fee, we are also unable to conduct a meaningful review on appeal.  The remedy is to remand the issue to the circuit court for American Legion to submit an itemized statement of fees and for the court to enter findings on the reasonableness of the fees requested. *See Brooks*, 2000 S.D. 16, ¶ 21, 605 N.W.2d at 179 (itemized statement of fees required; remand for court to admit itemized statement of attorney fees and determine reasonableness); *Dooley*, 1999 S.D. 136, ¶ 27, 601 N.W.2d at 282 (same). We, therefore, reverse the $14,704.99 attorney fee award to American Legion and remand the issue of attorney fees.[4]

**Appellate Attorney Fees**

[¶42.]        American Legion filed a motion for appellate attorney fees, along with an affidavit and itemization of attorney fees.  The County resisted American Legion's request.  Under SDCL 15-26A-87.3, appellate attorney fees may be awarded only "where such fees may be allowable[.]"  An award of appellate attorney fees is authorized under SDCL 10-11-78 "if the appellant does not prevail in its appeal of the property assessment."  We award American Legion $5,000 in appellate attorney fees.

[¶43.]        Affirmed in part, reversed in part, and remanded.

---

4.    In its reply brief, the County argues for the first time that "fees for fees" are not recoverable in the absence of specific language permitting such recovery. Because the County raised this argument in its reply brief, American Legion was precluded from responding.  We, therefore, decline to address the issue and express no opinion on the merits of this question. *See, e.g., Ellingson v. Ammann*, 2013 S.D. 32, ¶ 10, 830 N.W.2d 99, 102.

[¶44.]     GILBERTSON, Chief Justice, ZINTER and KERN, Justices, and WILBUR, Retired Justice, concur.

[¶45.]     WILBUR, Retired Justice, sitting for SALTER, Justice, disqualified.